BASS, Plaintiff in error, v. STATE, Defendant in error.

*November 5—November 30, 1965.*

202

203

For the plaintiff in error there was a brief and oral argument by *Griffin G. Dorschel* of Madison.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, and *William A. Platz,* assistant attorney general.

BEILFUSS, J.   The sole issue is whether the plaintiff in error did take the motor vehicle without the consent of the owner within the meaning of sec. 943.23, Stats.

Sec. 943.23, Stats., provides as follows:

"OPERATING VEHICLE WITHOUT OWNER'S CONSENT. Whoever intentionally takes and drives any vehicle without the consent of the owner may be fined not more than $1,000 or imprisoned not more than 5 years or both."

The plaintiff in error, the defendant Bass, contends that he had limited permission to use the car and that, therefore, there was not a taking without the consent of the owner.   His argument is that if you have lawful possession in the first instance you cannot be convicted of a crime wherein one of the essential elements is a taking without the consent of the owner.

As support the defendant cites the history of the statute.   In its original form in 1909 it did not require a taking, and violation was a misdemeanor.   [Sec. 1636–52m (1909); ch. 254, Laws of 1909.]   The statute was amended in 1913 to insert "takes" and to make violation a felony.   [Sec. 1636–52m (1913); ch. 690, Laws of 1913.]   The original bill in 1913 would have made appropriation of an automobile to one's own use larceny punishable up to fifteen years in prison.   The senate judiciary committee amended the original bill to the form which passed.   See Senate Journal 1913: Bill 389, S., and Substitute Amendment, No. 1, to Bill 389, S.   The statute today, for

the purpose of discussing the issue at hand, is substantially the same as the 1913 statute.

The legislative history does not strengthen the defendant's argument; at most it fortifies the state's position that the taking of an automobile without the consent of the owner is a separate crime and is not synonymous with larceny.

". . . Sec. 343.18, Stats., [now sec. 943.23] under which the present prosecution was commenced, provides: 'Any person who shall take, use and operate any automobile, motorcycle, or other similar motor vehicle upon any public highway of this state without the consent of the owner thereof shall, upon conviction thereof, be punished,' etc. The crime thus defined by sec. 343.18 is not a lesser degree of the crime of larceny. It is a distinct offense created by statute, and an offense not necessarily included in the crime of larceny. To constitute the offense described by sec. 343.18 it is necessary that the automobile taken without the consent of the owner shall be operated upon a public highway of this state. This is no essential element of the crime of larceny, . . ." *Eastway v. State* (1926), 189 Wis. 56, 58, 206 N. W. 879.

The defendant Bass relies upon the decision of this court in *State v. Mularkey* (1928), 195 Wis. 549, 218 N. W. 809. In the *Mularkey Case* the defendant rented a car from the owner, drove it beyond the area specified, did not return it at the time designated and, in fact, abandoned the car. The *Mularkey* opinion states, at page 551:

"We are in accord, in the main, with such a construction of a statute of this kind, and hold, therefore, that the mere unauthorized or extended use of such a vehicle by one who has lawfully obtained the consent of the owner to its taking for use and operation upon the public highway is not a violation of this statute; and that the substance of the offense aimed at by its provisions is the obtaining of the possession in the first instance without the consent of the owner."

The *Mularkey Case* must be distinguished upon its facts. In that instance the defendant acquired possession

of the vehicle by express permission of the owner. His use of the vehicle went beyond the area defined by the rental contract. Mularkey undoubtedly violated the terms of the contract, but his original possession and use was with the *express* knowledge and consent of the owner. The taking was not unlawful even though the use may have been.

In this instance the taking was not by the express consent of the owner. The owner Stern did not talk to Bass—he did not even know him. Nor did the station owner Abner, or his other employee, White, give any express consent to take the car. The decision to take the car from the station premises for his personal purposes was solely the determination of Bass. Clearly, this act was done without the knowledge or consent of any other person, including the owner.

The fact that Bass was directed by Abner through White to put the vehicle in the station overnight does not, in our opinion, constitute implied permission to use the car. Mere permission or even instruction to move the vehicle from one location on the filling-station premises to another location on the same premises cannot, under any reasonable interpretation, be construed as implied consent to take the vehicle from the station premises to an unknown and unlimited destination on an errand completely nonbeneficial to the owner and completely unrelated to the purpose for which possession of the vehicle was given to the station owner.

In 7 Am. Jur. (2d), Automobiles and Highway Traffic, p. 849, sec. 304, it is stated:

"The offense of taking, using, or operating a motor vehicle without the owner's consent may be committed by one whose original possession of the vehicle was lawful, but who subsequently uses the vehicle for his own purposes without the consent of the owner. For example, the offense may be committed by an employee of the owner of a motor vehicle in using the vehicle for his own purposes not connected with the purposes for which the

vehicle had been entrusted to him or in using the vehicle contrary to the instructions of the owner." [1]

The gravamen of larceny is an intention to permanently deprive the owner of possession of his property; such an intention is not an essential element of a statute prohibiting the operation of a motor vehicle without the owner's consent. In many, if not most, instances of taking and using an automobile without the consent of the owner, there is not an intention to permanently deprive the owner of possession or, if in truth, there is such intention, proof of the same is most difficult. Statutes prohibiting the taking and use of automobiles without the owner's consent are frequently referred to as "joyriding statutes." The evils aimed at by these statutes are (1) the owner is, temporarily at least, deprived of the use of his vehicle, (2) the vehicle is frequently abused and damaged, and (3) not infrequently the vehicle is used in such a manner as to cause danger and injury to other members of the public.

We agree with the trial court wherein it concluded: "I am satisfied, from the defendant's own testimony and the testimony of the other witnesses in the case, that the State has established that there was an intentional taking of this car and an intentional driving of it all without the consent of the owner."

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.

[1] See also *State v. Williams* (1943), 74 Ohio App. 370, 59 N. E. (2d) 58.