Mark MILLER, a minor by his Guardian ad Litem
Laurence J. Fehring, Robert Miller and Laura
Miller, Plaintiffs-Appellants,

v.

WAUSAU UNDERWRITERS INSURANCE COMPANY and City
of Oconomowoc, Defendants-Respondents.

Court of Appeals

*No. 02–1632. Submitted on briefs January 9, 2003.—Decided
February 5, 2003.*

2003 WI App 58

(Also reported in 659 N.W.2d 494.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Laurence J. Fehring* of *Habush, Habush & Rottier, S.C.* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Peggy E. Van Horn* of *Law Offices of Stilp & Cotton* of Brookfield.

Before Nettesheim, P.J., Anderson and Dykman, JJ.

¶ 1. NETTESHEIM, P.J. Mark Miller, a minor, was seriously injured when a soccer goal fell and struck him on the head during his team's soccer practice at Champion Field, a park owned by the City of Oconomowoc. Mark, by his guardian ad litem, and his parents, Robert and Laura Miller, sued the City and its insurer, Wausau Underwriters Insurance Company, for negligence in failing to properly maintain the soccer field and anchor the soccer goal. The Millers appeal the trial court's grant of summary judgment in favor of the City based on the recreational immunity statute, WIS. STAT. § 895.52 (1999–2000).[1]

¶ 2. Like the trial court, we conclude that the recreational immunity statute, WIS. STAT. § 895.52, bars the Millers' claim against the City. Alternatively, the Millers argue that their claim is not barred by the governmental immunity statute, WIS. STAT. § 893.80. We decline to address this argument on the merits

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version.

because even if the City is not protected by the governmental immunity statute, the City is nonetheless protected under the recreational immunity statute.

## *BACKGROUND*

¶ 3.　The facts established by the summary judgment record are undisputed. Until the 1980s, the City of Oconomowoc Park and Recreation Department sponsored youth soccer programs at its city parks. After dropping this sponsorship, the City continued to maintain its soccer fields and provide soccer goals for the fields. Thereafter, private soccer clubs were organized, including the Oconomowoc Soccer Association (the Association) and the Lake Country Unified Youth Soccer Association (LCUYSA). Mark's soccer team, the Vipers, was a member of LCUYSA.

¶ 4.　The City had an agreement with the Association by which the Association paid the City a fee of $350 per season for the use of Champion Field, a City-owned park. In exchange, the City accepted field reservations for the Association's practices and games. In addition, the City painted the boundary lines of the field with paint provided by the Association. For a period of time, the City also collected registration forms and money for the Association. The City did not set up teams or arrange schedules for the Association, nor did it provide uniforms, coaches, umpires or equipment.

¶ 5.　Unlike the Association, neither LCUYSA nor Mark's team, the Vipers, had any agreement with the City for the use of Champion Field. Instead, the Vipers' use of Champion Field came about informally. According to Mark's coach, the Vipers had been using a soccer field across the street from Champion Field. When the Vipers arrived to use this field during the spring of

1988, the team discovered that the field was no longer in usable condition. So the Vipers moved across the street to Champion Field and began using the field for its practices. Neither the Vipers nor LCUYSA notified the City that the team was using Champion Field for soccer practice, nor was the City paid a fee for such use.

¶ 6. On May 8, 1998, Mark was attending soccer practice with the Vipers at Champion Field. Mark was kicking soccer balls into a goal when his team members began to push the goal back to the field boundary lines. The goal tipped forward, striking Mark on the head and causing him serious injury.

¶ 7. On May 3, 2001, the Millers filed this action against the City and its insurer alleging that Mark participated in an organized team sport activity sponsored by the City at the time of his injury. At the core, the Millers alleged that the City was negligent in the manner it located, relocated and anchored the soccer goal. The City responded with the affirmative defenses of recreational and governmental immunity under WIS. STAT. §§ 895.52 and 893.80(4) and moved for summary judgment on the basis of these defenses.

¶ 8. With respect to recreational immunity, the City argued that Mark was engaged in a recreational activity within the meaning of WIS. STAT. § 895.52(1)(g) at the time of the accident. The Millers responded that Mark was engaged in an organized team sport activity sponsored by the City and, therefore, Mark's activity fell under the "sponsorship" exception set out in the recreational immunity statute.

¶ 9. On April 12, 2002, the trial court issued an oral decision granting the City's motion for summary judgment. The trial court found that the City was entitled to recreational immunity and that the exception to the recreational immunity statute did not apply

because the City did not sponsor the practices or games of Mark's team or LCUYSA. The Millers appeal.

## DISCUSSION

### Standard of Review

¶ 10. This court reviews the grant of summary judgment de novo, applying the same methodology as the circuit court. *Auman v. Sch. Dist. of Stanley-Boyd*, 2001 WI 125, ¶ 5, 248 Wis. 2d 548, 635 N.W.2d 762. Summary judgment is appropriate if there is no genuine issue about any material fact and the moving party is entitled to judgment as a matter of law. *Id.*; WIS. STAT. § 802.08(2). The parties agree that for purposes of the summary judgment the facts are not in dispute. Therefore, our review is limited to applying WIS. STAT. §§ 895.52 or 893.80(4) to the undisputed facts of this case to determine whether the City is immune from liability and is thus entitled to judgment as a matter of law. *See Auman*, 2001 WI 125 at ¶ 6.

### Recreational Immunity

¶ 11. The recreational immunity statute, WIS. STAT. § 895.52, limits the liability of property owners for injuries which occur during recreational activities. *Schultz v. Grinnell Mut. Reinsurance Co.*, 229 Wis. 2d 513, 517, 600 N.W.2d 243 (Ct. App. 1999). The legislature intended the recreational immunity statute to be liberally construed in favor of the property owner. *See* 1983 Wis. Act 418, § 1; *Schultz*, 229 Wis. 2d at 518–19. The statute was enacted "to encourage property owners to open their lands for recreational activities by removing a property user's potential cause of action against a

586

property owner's alleged negligence." *Doane v. Helenville Mut. Ins. Co.*, 216 Wis. 2d 345, 350, 575 N.W.2d 734 (Ct. App. 1998) (citing *Linville v. City of Janesville*, 184 Wis. 2d 705, 715, 516 N.W.2d 427 (1994)). The statute provides:

> **(2)** No DUTY; IMMUNITY FROM LIABILITY. (a) Except as provided in subs. (3) to (6), no owner and no officer, employee or agent of an owner owes to any person who enters the owner's property to engage in a recreational activity:
>
> 1. A duty to keep the property safe for recreational activities.
>
> 2. A duty to inspect the property, except as provided under s. 23.115(2).
>
> 3. A duty to give warning of an unsafe condition, use or activity on the property.
>
> (b) Except as provided in subs. (3) to (6), no owner and no officer, employee or agent of an owner is liable for the death of, any injury to, or any death or injury caused by, a person engaging in a recreational activity on the owner's property . . . .

Sec. 895.52(2)(b).

¶ 12. The parties agree that the City is an "owner" of "property," within the meaning of WIS. STAT. § 895.52(1)(d) and (1)(e). However, the parties dispute whether Mark was involved in a "recreational activity" as defined in § 895.52(1)(g):

> "Recreational activity" means any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity. "Recreational activity" includes . . . outdoor sport, game or educational activity. *"Recreational activity" does not include any organized team sport activity*

*sponsored by the owner of the property on which the activity takes place.* (Emphasis added.)

Specifically, the issue on appeal is whether Mark was engaged in an organized team sport activity sponsored by the City at the time of his injury such that the City lost its immunity under the "sponsorship" exception to recreational immunity.

¶ 13. For purposes of WIS. STAT. § 895.52, a "sponsor" is "a person or an organization that pays for or plans and carries out a project or activity." *Hupf v. City of Appleton*, 165 Wis. 2d 215, 222, 477 N.W.2d 69 (Ct. App. 1991). The amount of involvement necessary to establish sponsorship was discussed by this court in both *Hupf* and *Kloes v. Eau Claire Cavalier Baseball Ass'n, Inc.*, 170 Wis. 2d 77, 487 N.W.2d 77 (Ct. App. 1992).

¶ 14. In *Hupf*, we determined that the City of Appleton "sponsored" a softball league in a city park when the City took team registrations, maintained the grounds, and provided umpires, scorekeepers, bases and softballs. *Hupf*, 165 Wis. 2d at 222. The City also had league participants sign a form releasing the City's recreation department and the school district from liability for any injury suffered in an activity they "sponsored." *Id.* at 223.

¶ 15. In *Kloes*, we relied on *Hupf* in determining that the City of Eau Claire did not sponsor a baseball association even though it charged the association a "per game fee" and employed a maintenance worker to prepare the City-owned park for games. *Kloes*, 170 Wis. 2d at 84–85. The city did not schedule the games or decide what tournaments the association would partici-

pate in. *Id.* at 84. The association selected its own players, hired umpires for its games and furnished its own equipment. *Id.*

¶ 16. Relying on *Hupf*, the Millers argue that the City sponsored soccer at Champion Field when it collected registration forms, collected fees from associations and team participants, incurred expenses in maintaining the field and took field reservations for games and practices. However, these activities were performed in the context of the City's particular relationship with the Association, not LCUYSA or the Vipers. As to LCUYSA and the Vipers, the City's activities were limited to maintaining Champion Field and providing the soccer goals at that site. These activities were generic to the public at large; they were not provided pursuant to any arrangement, agreement or other relationship with LCUYSA or the Vipers.

¶ 17. The term "sponsor" adopted by this court in *Hupf* necessarily contemplates a relationship between the person or organization paying for or planning the project or activity and the intended beneficiary of such sponsorship. Further, the legislative purpose of WIS. STAT. § 895.52, as set forth in 1983 Wis. Act 418, § 1, similarly envisions a relationship between the sponsor and the activity, which results in financial benefit to the sponsor. It states, "The legislature intends by this act to limit the liability of property owners toward others who use their property for recreational activities under circumstances in which the owner does not derive more than a minimal pecuniary benefit." 1983 Wis. Act 418, § 1.

¶ 18. Based on the language of WIS. STAT. § 895.52, the legislative intent, and *Hupf*, we conclude that the

Millers' reliance on the sponsorship exception of the statute must rest on a sponsorship relationship between the City and LCUYSA or the Vipers.[2] We will not permit the Millers to "piggyback" their claim on any sponsorship relationship that arguably might exist between the City and the Association. If § 895.52 is to be liberally construed in favor of property owners, *Schultz*, 229 Wis. 2d at 518–19, it follows that the exceptions must be narrowly construed.

¶ 19. Therefore, we look for any evidence of a sponsorship relationship between the City and LCUYSA or the Vipers. To their credit, the Millers do not make an argument that such evidence exists because the summary judgment record is barren of such evidence. Instead, the Millers' argument rests solely and completely on their claim that the City's sponsorship of the Association constitutes sponsorship of all organized soccer team activities at Champion Field. As noted, we reject that argument.

¶ 20. We conclude that the City is entitled to recreational immunity under WIS. STAT. § 895.52.

### Governmental Immunity

■

¶ 21. The Millers make a further argument attempting to persuade us that the City is not entitled to governmental immunity under WIS. STAT. § 893.80(4). The implication of this argument is that if the City does not have governmental immunity, the recreational immunity that the City otherwise enjoys is lost. We reject the Millers' logic. Even if we were to conclude that the City is not entitled to governmental immunity, that

---

[2] Therefore, it matters not whether the City's arrangement with the Association constitutes sponsorship under the statute.

decision would not trump the City's recreational immunity. To rule otherwise would run contrary to the public policy that underpins the doctrine of recreational immunity. *See Schultz*, 229 Wis. 2d at 518–19.

## CONCLUSION

¶ 22. We hold that the City did not "sponsor" the soccer activity of LCUYSA or Mark's soccer team and that the City is therefore entitled to recreational immunity pursuant to WIS. STAT. § 895.52. We also hold that the City is entitled to recreational immunity even if we were to assume that the City is not entitled to governmental immunity pursuant to WIS. STAT. § 893.80(4). We affirm the trial court's grant of summary judgment in favor of the City.

*By the Court.*—Judgment affirmed.