Karl McNeil, Plaintiff-Appellant,

v.

Brandon Hansen and Maryland Casualty Company, Defendants-Respondents.

Supreme Court

*No. 2005AP423. Oral argument October 13, 2006.
—Decided May 18, 2007.*

2007 WI 56

(Also reported in 731 N.W.2d 273.)

For the plaintiff-appellant there were briefs by *John A. Becker* and *Becker, French & DeMatthew,* Racine, and oral argument by *John A. Becker.*

For the defendants-respondents there was a brief by *Edward W. Stewart, Danielle R. McCollister,* and *Lowe & Associates,* Waukesha, and oral argument by *Edward W. Stewart.*

An amicus curiae brief was filed by *James A. Friedman, Linda S. Schmidt,* and *LaFollette Godfrey & Kahn,* Madison, on behalf of Wisconsin Manufacturers & Commerce.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. This case comes to us on certification from the court of

appeals. The circuit court concluded that Brandon Hansen's (Hansen) action of reaching through an automobile's window and attempting to start the vehicle by turning the key did not constitute "operation of a motor vehicle" as that term is used in an exception to the exclusive remedy provision of the Worker's Compensation Act (the Act). Wis. Stat. § 102.03(2) (2003–04).[1] As a result, the circuit court concluded that the suit was barred by § 102.03(2), and it granted the defendants' motion for summary judgment, dismissing Karl McNeil's (McNeil's) complaint.

¶ 2. We conclude that when the action under consideration is undertaken to service or repair a vehicle, and the condition of the vehicle is such that it could not then be driven on a public roadway, the action does not constitute "operation of a motor vehicle" within the meaning of Wis. Stat. § 102.03(2). The action at issue here was attempting to start the vehicle when it was connected to a machine to flush the radiator. This action was undertaken to service the vehicle while it could not be driven on a public roadway. Therefore, it does not constitute the "operation of a motor vehicle" as that term is used in § 102.03(2). Accordingly, we affirm the circuit court's summary judgment dismissing McNeil's claims.

## I. BACKGROUND

¶ 3. On April 12, 2003, McNeil and Hansen were working at Fast Track Oil Change, performing a radiator flush on a customer's Jeep Wrangler. McNeil, Hansen's supervisor, hooked the Jeep up to a machine that flushes the radiator. The Jeep's engine had to be

---

[1] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

started in order for the machine to function, so McNeil asked Hansen to start the Jeep's engine while he remained in front of the Jeep to determine whether the hoses being used to flush the radiator were leaking. Hansen, while standing outside of the Jeep, leaned in through an open window and turned the ignition switch. The Jeep had a manual transmission and upon ignition it lurched forward and struck and injured McNeil.

¶ 4. McNeil sued Hansen. Maryland Casualty Company also was named as a defendant. It paid worker's compensation benefits to McNeil as a result of the accident, and therefore, it had subrogation rights with regard to McNeil's claim, pursuant to Wis. Stat. § 102.29.[2] Hansen and Maryland Casualty Company moved for summary judgment of dismissal based on Wis. Stat. § 102.03(2), which provides that the Act is generally the exclusive remedy against employers and coemployees for job-related injuries. The circuit court granted summary judgment, after concluding that Hansen's action did not constitute "operation of a motor vehicle" as the term is used in the exception to the exclusive remedy provision in § 102.03(2). The court concluded that the Act required a "very narrow approach" when defining "operation of a motor vehicle" because the exceptions to the Act's coemployee immunity provisions are to be narrowly construed.

---

[2] The Complaint alleges Maryland Casualty Company paid McNeil worker's compensation benefits, and the Answer admits that allegation. We also note that the record contains a letter from Susan L. Banahasky of Maryland Casualty Company stating "Zurich Insurance Company" made payments to McNeil for worker's compensation benefits. We have not attempted to reconcile these two statements, but have relied on the factual assertion and admission in the pleadings that Maryland Casualty was the worker's compensation carrier.

¶ 5. McNeil appealed the circuit court's decision and the court of appeals certified the case due to the conflict between (1) its conclusion that the facts could come within existing definitions of "operation of a motor vehicle" in other statutes, and (2) its conclusion that the Act generally provides the exclusive remedy for work-related injuries. We granted certification.

## II. DISCUSSION

A. Standard of Review

■

¶ 6. We review a grant of summary judgment independently, applying the same methodology as the circuit court. *AKG Real Estate, LLC v. Kosterman*, 2006 WI 106, ¶ 14, 296 Wis. 2d 1, 717 N.W.2d 835 (citing *O'Neill v. Reemer*, 2003 WI 13, ¶ 8, 259 Wis. 2d 544, 657 N.W.2d 403); *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 401 N.W.2d 816 (1987).

■

¶ 7. To determine whether summary judgment is appropriate in the case before us, we interpret Wis. Stat. § 102.03(2). The interpretation and application of a statute to an undisputed set of facts are questions of law that we review independently. *Rocker v. USAA Cas. Ins. Co.*, 2006 WI 26, ¶ 23, 289 Wis. 2d 294, 711 N.W.2d 634; *State v. Sostre*, 198 Wis. 2d 409, 414, 542 N.W.2d 774 (1996) (citing *Ynocencio v. Fesko*, 114 Wis. 2d 391, 396, 338 N.W.2d 461 (1983)).

B. Operation of a Motor Vehicle

¶ 8. In general, an employee's exclusive remedy for a job-related injury is under the Act. Wis. Stat. § 102.03(2). However, there are three limited excep-

tions in the statute that allow an employee to bring an action against a coemployee. *Id.* Section 102.03(2) provides:

> Where such conditions exist the right to the recovery of compensation under this chapter shall be the exclusive remedy against the employer, any other employee of the same employer and the worker's compensation insurance carrier. This section does not limit the right of an employee to bring action against any coemployee for an assault intended to cause bodily harm, or against a coemployee for negligent operation of a motor vehicle not owned or leased by the employer, or against a coemployee of the same employer to the extent that there would be liability of a governmental unit to pay judgments against employees under a collective bargaining agreement or a local ordinance.

*Id.* In this case, we must decide whether Hansen's action of reaching through the vehicle's window during service of that vehicle and turning the ignition switch while the vehicle could not be driven on a public roadway falls within the term "operation of a motor vehicle" under the second exception in § 102.03(2).

¶ 9.  "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' " *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting *Seider v. O'Connell,* 2000 WI 76, 236 Wis. 2d 211, 232, 612 N.W.2d 659). The context in which the operative language appears is important. Therefore, the language should be "interpreted in the context in which it is used; not in isolation but as part of a whole." *Id.,* ¶ 46. If the statutory language is unambiguous, extrinsic sources of interpretation generally are not consulted. *Id.* A statute

is ambiguous "if it is capable of being understood by reasonably well-informed persons in two or more senses." *Id.*, ¶ 47. If a statute is ambiguous, a court may turn to external sources, such as legislative history, to assist its interpretation. *Id.*, ¶ 48.

¶ 10. A general rule of statutory construction is that exceptions within a statute "should be strictly, and reasonably, construed and extend only as far as their language fairly warrants." 82 C.J.S. *Statutes* § 371 (2006). If a statute is liberally construed, "it follows that the exceptions must be narrowly construed." *Miller v. Wausau Underwriters Ins. Co.*, 2003 WI App 58, ¶ 18, 260 Wis. 2d 581, 659 N.W.2d 494 (interpreting exceptions to the recreational immunity statute, Wis. Stat. § 895.52, narrowly because the statute is liberally construed in favor of property owners).

¶ 11. The term "operation of a motor vehicle" is not defined in the Act. The word "operation" may have different meanings, depending on the context in which it is used. *Hake v. Zimmerlee*, 178 Wis. 2d 417, 421, 504 N.W.2d 411 (Ct. App. 1993) (citing *Lukaszewicz v. Concrete Research, Inc.*, 43 Wis. 2d 335, 342, 168 N.W.2d 581 (1969)). For example, depending on the context, "operation" could require actually driving a vehicle, or it could refer to simply activating any of the controls of a vehicle.[3] The meaning of "operation of a motor vehicle" in Wis. Stat. § 102.03(2) is not readily discernable from

---

[3] *See, e.g.,* Wis. Stat. § 340.01(41) (defining "operator" as "a person who drives or is in actual physical control of a vehicle"); Wis. Stat. § 346.63(3)(b) (defining "operate" as "the physical manipulation or activation of any of the controls of a motor vehicle necessary to put it in motion").

its context. Therefore, we agree with the court of appeals; the term is ambiguous because it has more than one reasonable interpretation. *Id.* Since the term is ambiguous, we turn to the legislative history to aid our interpretation.

¶ 12. In *Hake,* the court of appeals reviewed the legislative history and examined the purpose of Wis. Stat. § 102.03(2) while determining whether an employee's action of closing the door of a vehicle on a coemployee's hand constituted negligent "operation of a motor vehicle" under § 102.03(2). *Id.* at 420–422. The court stated that one purpose of the Act "is to allocate the cost of employment injuries to the industry or business in which they occur and, ultimately, to the consuming public as part of the price for the goods or services offered." *Id.* at 421–22 (quoting *Oliver v. Travelers Ins. Co.,* 103 Wis. 2d 644, 648, 309 N.W.2d 383 (Ct. App. 1981)).

¶ 13. *Hake* noted that prior to 1977, the Act precluded suits against the employer and the worker's compensation insurance carrier, but it did not prohibit suits between coemployees for work-related injuries. *Id.* at 422. Consistent with the purpose of the Act, in 1977 the Act was revised in accordance with recommendations from the Worker's Compensation Advisory Council (the Advisory Council) to prohibit most work-related injury suits between coemployees. *Id.* The Advisory Council explained the amendment to Wis. Stat. § 102.03(2) as follows:

> [The amendment] would permit a suit where there was an assault by the co-employe or where there was negligent operation of a motor vehicle not owned or leased by the employer. It is a fact that virtually all insurance policies issued to employers for public liability or for fleet coverage on employer owned or leased

367

vehicles exclude payment of damages where the claim of an employe is against a co-employe. *The result is that the employe who is being sued is left without protection and the little person is the one who gets hurt.* The attention of the Advisory Council has been called to cases where . . . [the co-employe] who was sued was placed in a financial position[,] because of the cost of defending or because of the judgment for damages that was recovered[,] that the employe would not be able to recover from financially for many years or for the balance of his life.

*Id.* at 422–23 (emphasis added). Since the main concern of the Advisory Council was the financial burden coemployee suits could impose upon workers, the Advisory Council encouraged the legislature "to recreate the statute so that coemployee immunity would be the rule, and coemployee liability would be the exception to that rule." *Id.* at 423.

¶ 14. The court further explained the purpose of coemployee immunity as follows: "Injuries caused by a negligent coemployee are everyday occurrences. Such injuries are directly related to the employment, and pursuant to the stated purpose or objective of the Worker's Compensation Act, the costs should be passed on to the consuming public." *Id.* (quoting *Oliver*, 103 Wis. 2d at 648). In examining the exception for the negligent operation of a motor vehicle that is not owned or leased by the employer, the court presumed the legislature believed such a vehicle would be privately insured for its negligent operation. *Id.* at 424. The Advisory Council meeting minutes from December 13, 1976, indicate that the exceptions to the exclusive remedy provision were drafted with the intent of limiting coemployee liability to instances where some person or entity other than the coemployee would satisfy any

resulting judgment. *See Keller v. Kraft,* 2003 WI App 212, ¶ 11, 267 Wis. 2d 444, 671 N.W.2d 361 (interpreting the scope of the third exception in Wis. Stat. § 102.03(2), which allows a claim against a coemployee when a governmental unit will pay any judgment under a collective bargaining agreement or a local ordinance).[4] Limiting the exception to instances where the coemployee will be covered by other insurance rectifies the concern the legislature had regarding the financial burden that workplace injuries could place on workers due to coemployee liability.

¶ 15.   In accord with the purpose and intent of the Act, to make coemployee immunity the rule and coemployee liability the exception thereby protecting workers from the financial burden of coemployee suits, the court in *Hake* narrowly construed the exception to coemployee immunity due to negligent operation of a vehicle. *Hake,* 178 Wis. 2d at 426.[5] A narrow construction also follows the general rule of statutory interpretation that statutory exceptions should be strictly construed. *See* 82 C.J.S. *Statutes* § 371 (2006); *Miller,* 260

---

[4] The minutes state:   "Discussion was held on the proposed co-employe exclusion. Mr. Grenell inquired about the possibility of drafting a provision that would limit the co-employe liability but permit recovery against a fellow employe in the event that there were auto or other insurance." *Keller v. Kraft,* 2003 WI App 212, ¶ 11, 267 Wis. 2d 444, 671 N.W.2d 361.

[5] Other states have also narrowly construed exceptions to their respective worker's compensation exclusivity provisions. *See Kuhar v. Phillips,* 881 A.2d 554, 555 (Conn. Super. Ct. 2005) (stating the exception based on fellow "employee's negligence in the operation of a motor vehicle" must be narrowly construed); *Taylor v. Sch. Bd. of Brevard County,* 888 So.2d 1, 5 (Fla. 2004) (interpreting the exception to fellow employee immunity narrowly under ordinary rules of statutory construction).

Wis. 2d 581, ¶ 18. To do otherwise, would cause the exception to swallow the rule of coemployee immunity.

■

¶ 16. While the purpose of the statute and the general rule of statutory interpretation instruct us to interpret the exception in Wis. Stat. § 102.03(2) narrowly, we must more specifically define what "operation of a motor vehicle" means to determine whether turning the ignition switch of a vehicle under the circumstances in this case falls within an exception to coemployee immunity. This task is not easily accomplished because other Wisconsin statutes employ the term "operate." *See, e.g.,* Wis. Stat. § 346.63(3)(b) (relating to prohibition of operating a motor vehicle while intoxicated); Wis. Stat. § 350.01(9r) (relating to snowmobile safety). However, as explained below, these statutes differ in purpose from § 102.03(2), and the purpose of a statute informs our interpretation of it. *Klein v. Board of Regents of the University of Wis. Sys.,* 2003 WI App 118, ¶ 13, 265 Wis. 2d 543, 666 N.W.2d 67 (concluding that statutory interpretation that contravenes the purpose of a statute is not favored).

¶ 17. For example, the statute prohibiting the operation of a motor vehicle while intoxicated (OMVWI) differs in two important respects. First, it defines "operate" within the statute itself as "the physical manipulation or activation of any of the controls of a motor vehicle necessary to put it in motion." Wis. Stat. § 346.63(3)(b).[6] Wisconsin Stat. § 102.03(2) contains no definition of "operation," nor does any other provision of

---

[6] *See also* Wis. Stat. § 343.305(1)(c) (defining "operate" the same as Wis. Stat. § 346.63(3)(b) in regard to implied consent for driver intoxication tests); Wis. Stat. § 943.23(1)(c) (defining "operate" the same as § 346.63(3)(b) in regard to penalties for operating a vehicle without the owner's consent).

worker's compensation law define it. Second, the purpose of the OMVWI statute "is to deter a person who is intoxicated from getting behind the wheel of a motor vehicle in the first instance, rather than to have a court or jury make a fine distinction later [about] whether the person was in a position to cause harm." *State v. Modory*, 204 Wis. 2d 538, 544, 555 N.W.2d 399 (Ct. App. 1996) (citing *Milwaukee County v. Proegler*, 95 Wis. 2d 614, 291 N.W.2d 608 (Ct. App. 1980)). Since the purpose of the OMVWI statute is to deter intoxicated persons from being in a position where they could enable a motor vehicle to cause harm, operation is broadly construed to facilitate that purpose.

¶ 18. In contrast, coemployee liability for negligent operation of a motor vehicle under Wis. Stat. § 102.03(2) is a narrow exception to the general rule that worker's compensation is the exclusive remedy for work-related injuries. Therefore, the definition of "operate" from the OMVWI statutes is inappropriate for § 102.03(2), given the different purposes of the statutes.[7]

---

[7] Since Wis. Stat. § 343.305(1)(c) (the implied consent statute) defines "operate" the same as Wis. Stat. § 346.63(3)(b), relates to the same subject matter as § 346.63(3)(b), and is part of the same statutory scheme, we interpret "operate" in § 343.305(1)(c) the same as "operate" in § 346.63(3)(b). *See State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110 (stating that statutory language is interpreted "not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results"). Therefore, for the reasons discussed above, the definition of "operate" in § 343.305(1)(c) does not apply to Wis. Stat. § 102.03(2).

Wisconsin Stat. § 943.23(1)(c) also defines "operate" the same as Wis. Stat. § 346.63(3)(b). The purpose of § 943.23(1)(c)

¶ 19. Similar to the broad interpretation under the OMVWI statute, we interpreted the term "operate" under a snowmobile safety statute, Wis. Stat. § 350.09, broadly. "Operate" is also defined in Wis. Stat. ch. 350 as "the exercise of physical control over the speed or direction of a snowmobile or the physical manipulation or activation of any of the controls of a snowmobile necessary to put it in motion." Wis. Stat. § 350.01(9r). This is a different definition from that found in Wis. Stat. § 346.63(3)(b). However, we determined the term "operate" in regard to a snowmobile was not ambiguous in § 350.09, and relying on *Modory,* we concluded that a snowmobile need not be put in motion in order for it to be operated, but some affirmative action must have occurred. *Burg v. Cincinnati Cas. Ins. Co.,* 2002 WI 76, ¶¶ 21–22, 254 Wis. 2d 36, 645 N.W.2d 880.[8] However, the definition of the term "operate" under the snowmo-

is to prohibit so-called "joy-riding." *Bass v. State,* 29 Wis. 2d 201, 207, 138 N.W.2d 154 (1965). The statute is aimed at addressing "evils" resulting from "joy-riding" such as: "(1) the owner is, temporarily at least, deprived of the use of his vehicle, (2) the vehicle is frequently abused and damaged, and (3) not infrequently the vehicle is used in such a manner as to cause danger and injury to other members of the public." *Id.* Therefore, as with the OMVWI statute, the purpose of § 943.23 is to deter persons from assuming a position where they could cause harm with a vehicle. Due to the purpose of the statute and context in which the term "operate" is used, the definition of "operate" in § 943.23 also does not apply to Wis. Stat. § 102.03(2).

[8] We decided the definition of "operate" did require an "affirmative physical act of manipulation or activation of the snowmobile's controls necessary to put it in motion." *Burg v. Cincinnati Cas. Ins. Co.,* 2002 WI 76, ¶ 22, 254 Wis. 2d 36, 645 N.W.2d 880 (concluding that sitting on a parked snowmobile with its engine off is not operating the snowmobile under the statute).

bile safety statute is not appropriate to engraft onto Wis. Stat. § 102.03(2) because, similar to the OMVWI statute, the purpose of § 350.09 is to limit occasions that could lead to harm. This purpose is facilitated by a broad and inclusive construction of the term, operate.[9]

¶ 20.  However, some cases do construe the term "operation of a motor vehicle" more narrowly than those we discussed above. In so doing, they distinguish operation of a vehicle from actions associated with the maintenance or repair of a vehicle. See Graf v. Bloechl, 36 Wis. 2d 635, 154 N.W.2d 340 (1967); Frye v. Angst, 28 Wis. 2d 575, 137 N.W.2d 430 (1965).

¶ 21.  In Graf, an inoperable vehicle was towed to a service station for repairs. During the course of these repairs, the mechanics attempted to start the engine by pouring gasoline into the carburetor as the ignition switch was turned. This caused the gasoline in the container to catch fire, and one of the workers, Bloechl, threw the burning gasoline over his shoulder without knowing that Graf was standing behind him. Graf was injured. We were asked to determine whether turning the key that activated the engine's ignition was operation of a motor vehicle, as that term was used in the

---

[9] See also Wis. Stat. § 23.33(1)(ir) (defining "operate" the same as Wis. Stat. § 350.01(9r) for the purposes of all-terrain vehicle provisions, including the prohibition of the intoxicated operation of an all-terrain vehicle under § 23.33(4c)). Since § 23.33(1)(ir) has the same definition of operate as § 350.01(9r) and the same purposes (to (1) promote safety and (2) deter intoxicated operation) as chs. 350 and 346, we conclude the term "operate" in § 23.33(1)(ir) is not applicable to Wis. Stat. § 102.03(2). We note that "operation" is defined in § 23.33(1)(it) the same as operate, but with grammatical word choices consistent with the noun, "operation."

former direct action statute.[10] *Graf,* 36 Wis. 2d at 638. We concluded that Bloechl's action did not constitute operation of a motor vehicle because Bloechl's "primary intention and purpose in attempting to start the car was to finish the repairs." *Id.* at 642. We distinguished maintenance from operation and stated:

> 'Maintenance' of an automobile has never been considered a part of operation, or of management and control. Maintenance connotes a state of physical repair; management and control refers to the manner of its use. And even in their dictionary senses these words do not readily admit of the inclusion of maintenance. ... The attempt to start the motor in the case at bar was a part of the process of repair and consequently an act of 'maintenance,' not 'use, operation, management or control' of the vehicle.

*Id.* at 643 (quoting *Frye,* 28 Wis. 2d at 582).[11] We explained that maintenance and repair are actions that

---

[10] Wisconsin Stat. § 260.11, the direct action statute at that time, was repealed by a Supreme Court Order dated February 17, 1975, effective on January 1, 1976.

[11] *See also Chase v. Dunbar,* 185 So.2d 563 (La. Ct. App. 1966). In *Chase,* the court interpreted the term "use" under an insurance policy, which the court characterized as embracing and including "operation." *Id.* at 569. The court distinguished "use" from "maintenance" based on "the intent, purpose and objective of the person concerned." *Id.* at 570. Therefore, the court concluded that the action of one mechanic starting the car while another mechanic poured gasoline into the carburetor was maintenance and not use of the vehicle because the mechanics were not starting the car with the intent to use the vehicle for any purpose other than to repair the vehicle so that it could be used later by its owner. *Id.* (citing a "nearly analogous" case, *Wall v. Windmann,* 142 So.2d 537 (La. Ct. App. 1962), "wherein [the court] held the starting of a truck's motor at the request of a mechanic repairing the engine constituted 'maintenance' ").

fall outside of "use, operation, management or control" of the vehicle.[12] *Id.* at 643. We concluded this was so because Bloechl's "primary intention and purpose in attempting to start the car was to finish the repairs." *Id.* at 642. Therefore, we concluded Bloechl's action was not operation of the vehicle. *Id.* at 642–43.

¶ 22.   Although we cited past decisions that also had concluded that maintenance and repairs were not the use or operation of a motor vehicle, *id.* at 642, our decision rested on a common sense understanding that there is an inherent difference between repairing a vehicle and operating or using it, *id.*

¶ 23.   We conclude the distinction between operation and maintenance or repairs should apply in the context of the exception to the exclusivity provision in Wis. Stat. § 102.03(2). An interpretation of the term "operation" that distinguishes between operation and maintenance or repairs is consistent with the purposes of the Act:   (1) to allocate the cost of workers' injuries to the industry in which they occur and (2) to protect

---

[12] "[N]egligent operation, management or control" were the words used in then Wis. Stat. § 260.11(1), which we were interpreting. *Graf v. Bloechl,* 36 Wis. 2d 635, 639, 154 N.W.2d 340 (1967). In *Graf,* we held that the plaintiff's injuries arose out of the "maintenance" of a motor vehicle. *Id.* at 640–41. *Hasselstrom v. Rex Chainbelt, Inc.,* 50 Wis. 2d 487, 184 N.W.2d 902 (1971) reviewed *Graf* and *Frye v. Angst,* 28 Wis. 2d 575, 137 N.W.2d 430 (1965), in the context of a revision to the direct action statute, then Wis. Stat. § 260.11(1). We noted that the revision expanded "the direct-action statute, sec. 260.11(1), to include actions for damages caused by the negligent maintenance, use or defective construction of a motor vehicle." *Hasselstrom,* 50 Wis. 2d at 497. *Hasselstrom* has no effect on whether the acts under consideration constitute "maintenance" or "operation" of a motor vehicle because *Hasselstrom* did not re-examine that question.

workers from the financial burdens of coemployee suits. Injuries to workers caused by negligent coemployees while performing maintenance or repairs on a motor vehicle that could not then be driven on a public roadway are common occurrences for those workers in the vehicle maintenance and repair industry. They are directly related to their employment. Therefore, the costs of these injuries should be passed on to the industry and ultimately the consuming public; they should not be born by the worker.

¶ 24. Furthermore, a vehicle that is not leased or owned by the employer may be privately insured and have liability coverage for its negligent operation, which could alleviate some of the concern regarding placing a financial burden on workers. In Wisconsin, vehicle insurance is not required.[13] Therefore, simply because the vehicle is not owned or leased by the employer, it does not follow that there will be insurance to cover any injury a negligent coemployee inflicts upon an employee. Furthermore, the potential lack of insurance by a third-party owner of a motor vehicle is especially troubling because the coemployee who has a judgment rendered against him for the negligent operation of a motor vehicle during the course of his employment cannot sue his employer for contribution or indemnification as the Act establishes that it is the employer's sole liability for an injured worker.[14]

---

[13] *See* Wis. Stat. ch. 344 that requires proof of financial responsibility by insurance or bond only after notice of an unpaid judgment against the vehicle owner has been presented to the Department of Transportation.

[14] Because automobile owners are not required to purchase insurance for their vehicles and because many insurance policies are for a minimal amount of insurance that may be insufficient to cover a severe personal injury, a negligent coem-

*Mulder v. ACME-Cleveland Corp.,* 95 Wis. 2d 173, 177, 290 N.W.2d 276 (1980). Therefore, under the current statute, any judgment against an uninsured coemployee who negligently operates a motor vehicle during the course of his employment will remain with the worker, contrary to the purpose of the 1977 statutory revisions.[15]

¶ 25.    Furthermore, construing the exception to coemployee immunity narrowly will not result in leaving an injured employee without relief because worker's compensation benefits will be paid for the employee's injuries. In this case, worker's compensation benefits have been paid to McNeil. We recognize that our decision in this regard requires some further clarification of our discussion in *Rocker.*

¶ 26.    In *Rocker,* a coemployee in a full-service car wash drove a customer's automobile into a fellow employee. *Rocker,* 289 Wis. 2d 294, ¶ 6. We were called upon to decide whether a full-service car wash was a "motor vehicle handler" within the meaning of Wis. Stat. § 632.32(2)(b). *Id.,* ¶ 3. We did so in the context of an exclusion in the employer's comprehensive policy that purported to exclude coverage for the employee's

---

ployee who causes an injury to a coworker could be saddled with a money judgment that he will never be able to satisfy. Accordingly, the legislature may wish to examine "operation of a motor vehicle" exception to Wis. Stat. § 102.03(2) and determine whether it should modify the statute such that a coemployee who negligently operates a motor vehicle will be liable only to the extent that there is insurance to pay a judgment.

[15] Accordingly, the legislature may wish to revisit the second exception to the exclusive remedy provision of Wis. Stat. § 102.03(2) to determine whether the statute needs further revision, in light of its purpose of making coemployee immunity the rule and coemployee liability the exception.

injury. *Id.,* ¶ 4. We concluded that the exclusion was invalid because a full-service car wash is a motor vehicle handler within § 632.32(2)(b), and accordingly, § 632.32(6)(a) precludes a policy provision that excludes coverage for an employee's injury. *Id.,* ¶ 49.

¶ 27.   However, we were also asked in *Rocker* to decide whether *Gorzalski v. Frankenmuth Mutual Insurance Co.,* 145 Wis. 2d 794, 429 N.W.2d 537 (Ct. App. 1988) was still good law. *Rocker,* 289 Wis. 2d 294, ¶ 50. In *Gorzalski,* a coemployee had driven a customer's car into a fellow employee, causing injury. The employer's policy had an exclusion for coemployee injuries that the court of appeals upheld, notwithstanding Wis. Stat. § 632.32(6)(a). *Gorzalski,* 145 Wis. 2d at 804. We overruled that conclusion. *Rocker,* 289 Wis. 2d 294, ¶ 52. We then went on to opine that the injured employee in *Gorzalski* had a remedy in addition to that provided by the Act because the negligent employee was not operating a vehicle owned or leased by the employer. *Id.,* ¶ 53. And, while we explained that a negligent employee had "potential liability" to a fellow employee, we did not attempt to determine whether the employee's conduct in *Rocker* actually fell within the statutory exclusion of Wis. Stat. § 102.03(2). *Id.*

¶ 28.   Our decision herein is consistent with our discussion in *Rocker* when we conclude that actions that constitute maintenance or repairs of a motor vehicle, while the condition of the vehicle is such that it could not then be driven on a public roadway, cannot constitute operation of a motor vehicle. Here, Hansen was standing outside of the vehicle. Hansen's action in attempting to start the engine was undertaken to service the vehicle by finishing the maintenance of its radiator when it was connected to a machine and could

not be driven on a public roadway. Accordingly, his action did not constitute "operation of a motor vehicle" under Wis. Stat. § 102.03(2).

## III. CONCLUSION

¶ 29. We conclude that when the action under consideration is undertaken to service or repair a vehicle, and the condition of the vehicle is such that it could not then be driven on a public roadway, the action does not constitute "operation of a motor vehicle" within the meaning of Wis. Stat. § 102.03(2). The action at issue here was attempting to start the vehicle when it was connected to a machine to flush the radiator. This action was undertaken to service the vehicle while it could not be driven on a public roadway. Therefore, it does not constitute the "operation of a motor vehicle" as that term is used in § 102.03(2). Accordingly, we affirm the circuit court's summary judgment dismissing McNeil's claims.

*By the Court.*—The decision of the circuit court is affirmed.

¶ 30. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). The issue presented is whether the following conduct constitutes "operation of a motor vehicle" under Wis. Stat. § 102.03(2) when the motor vehicle lurches forward on the turn of the ignition key and injures a co-employee:  An employee who is outside a vehicle turns the ignition key of a vehicle that is connected to a machine to flush the radiator and the vehicle cannot be driven on a public roadway while attached to the machine. I agree with the majority opinion that the answer to this question is NO.

379

¶ 31. The instant case does not present the only fact situation in which the question of whether particular conduct constitutes "operation of a motor vehicle" under Wis. Stat. § 102.03(2). The court's decision does not provide the answer to other fact situations because the court, like the statute, does not define specifically or generally what "operation of a motor vehicle" means under Wis. Stat. § 102.03(2).

¶ 32. Furthermore, other statutes defining "operation of a vehicle" (or a variation of this phrase) are of no assistance in defining "operation of a motor vehicle" under Wis. Stat. § 102.03(2). In many of these other statutes the legislature has defined "operation of a vehicle," and in cases coming to this court, the court interprets the statutory definition of operation of a vehicle. Furthermore, the meaning of the phrase "operation of a vehicle" depends on the purpose of the statute.

¶ 33. Today's opinion decides this case. Different conduct will be evaluated on a case-by-case basis—not on a standard set forth in the instant case.

¶ 34. Accordingly, I concur.

¶ 35. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.