**COURT OF APPEALS
DECISION
DATED AND FILED**

**October 13, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2020AP2035**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019CV377

**IN COURT OF APPEALS
DISTRICT III**

JEANNE FRANSWAY,

 PLAINTIFF-APPELLANT,

 V.

MARKQUART AUTOMOTIVE INC.,

 DEFENDANT-RESPONDENT.

 APPEAL from a judgment of the circuit court for Eau Claire County: MICHAEL A. SCHUMACHER, Judge. *Affirmed.*

 Before Stark, P.J., Hruz and Gill, JJ.

 **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

 ¶1 PER CURIAM. Jeanne Fransway appeals a summary judgment dismissing her claims against Markquart Automotive Inc. for violations of the

Wisconsin Consumer Act ("WCA"), WIS. STAT. chs. 421-427 (2019-20).[1] To prevail on her claims, Fransway needed to establish that Markquart was acting as a "debt collector," as that term is used in WIS. STAT. § 427.104. We conclude the undisputed facts establish that Markquart was not acting as a "debt collector," and we therefore affirm the circuit court's grant of summary judgment in favor of Markquart.[2]

## BACKGROUND

¶2      Fransway and her son, Tyler, agreed that Fransway would purchase a vehicle for Tyler to use at his new job. On June 29, 2019, Tyler located a Ford F150 pickup truck at Markquart's business location that he wanted to purchase. While at Markquart, Tyler discussed financing for the purchase with Douglas Miller, a Markquart employee. Miller spoke to Fransway by phone, and she confirmed that Tyler had "all [her] information" and could "do all the leg work" for the transaction.

¶3      Miller then proceeded with Markquart's customary process for securing financing for a vehicle purchase. That process involves entering the customer's information into a computer-based system called Route One, which then shares the information with lenders. Interested lenders then provide financing

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] The parties also dispute whether the undisputed facts establish that Markquart violated—or, alternatively, did not violate—the WCA. Because we conclude the circuit court properly granted Markquart summary judgment on other grounds, we need not address these additional arguments. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).

proposals to Markquart. The only financing proposal that Markquart received in response to Fransway's Route One application was from JP Morgan Chase Bank NA ("Chase").

¶4 Miller subsequently averred that he also spoke by phone to a representative from Royal Credit Union ("RCU") on June 29, 2019, and he was told that RCU would finance the purchase if Fransway provided an additional $1,500 down payment. According to Miller, the additional down payment would not have increased the amount of money that Markquart received in the transaction; it simply would have required Fransway to pay an additional $1,500 up front, which would have reduced the amount of her loan. The record is not clear as to whether Miller informed Fransway or Tyler on June 29 about the option to obtain financing through RCU. The sale of the pickup truck proceeded with the understanding that Chase would provide financing for the transaction.

¶5 Fransway and Markquart executed several documents to complete the purchase of the truck on June 29, 2019, including a Motor Vehicle Purchase Contract ("Purchase Agreement"). The Purchase Agreement stated that the sale of the truck was not contingent upon financing. The Purchase Agreement also stated: "If you have taken delivery of the vehicle this contract is final."

¶6 Fransway and Markquart also executed a Motor Vehicle Consumer Simple Interest Installment Sale and Security Agreement ("Installment Agreement"), which set forth the financial terms of the purchase. Although the Installment Agreement was between Fransway and Markquart, it expressly stated that it "may be assigned to" Chase. Fransway and Markquart also executed an Assignment of Installment Sale Agreement, which stated that Markquart "assigns all rights and interest" in the Installment Agreement to Chase.

¶7     Fransway took delivery of the pickup truck on June 29, 2019.  About two weeks later, on July 11, a Chase representative contacted Miller and told him that Chase was "reversing [its] financing decision" regarding Fransway.  According to Miller, Chase reversed its decision because it believed, based on a customer interview with Fransway, that the transaction was a "straw purchase."  In other words, Chase believed that although Fransway had used her credit information to secure financing for the purchase of the truck, Tyler would actually be the person making the loan payments.

¶8     Miller subsequently called Fransway and told her that Chase was declining the loan.  He also told Fransway that if Chase did not change its decision, she would have to return the truck, and the transaction would be void.  Miller explained to Fransway that she could potentially obtain alternative financing through RCU, but she would need to make an additional $1,500 down payment.  Fransway indicated that she was unwilling to do so.

¶9     Miller also called Tyler and told him that if other financing for the purchase could not be arranged, Tyler would need to bring the truck back to Markquart.  Miller discussed financing alternatives with Tyler, including the RCU loan and the possibility of having Tyler's wife act as a co-signer.

¶10    Fransway ultimately contacted RCU directly and arranged for alternative financing.  By doing so, Fransway secured a loan that saved her more than $2,700 over the life of the loan, as compared to the loan originally offered to her by Chase.  The amount financed remained the same under the RCU loan, and the savings of $2,700 was solely attributable to the RCU loan's more favorable terms.  RCU did not require Fransway to make an additional down payment of $1,500, contrary to Miller's averment that RCU told him Fransway would be

required to do so.  Fransway signed a second Installment Agreement on July 12, 2019, and that agreement was then assigned to RCU.

¶11    Fransway subsequently filed this lawsuit against Markquart, asserting that Markquart had violated the WCA—specifically, WIS. STAT. § 427.104, pertaining to prohibited debt collection practices—in three ways.  The parties later filed cross-motions for summary judgment.  As relevant to this appeal, Markquart argued that Fransway could not prevail on her claims under § 427.104 because the undisputed facts established that Markquart was not acting as a "debt collector" for purposes of that statute.  The circuit court agreed, and it therefore granted summary judgment in favor of Markquart.  Fransway now appeals.

## DISCUSSION

¶12    We review a grant of summary judgment independently, using the same methodology as the circuit court.  *Hardy v. Hoefferle*, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843.  Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  WIS. STAT. § 802.08(2).  To the extent our review of a summary judgment decision requires us to interpret statutes and apply them to undisputed facts, those inquiries also present questions of law for our independent review.  *See McNeil v. Hansen*, 2007 WI 56, ¶7, 300 Wis. 2d 358, 731 N.W.2d 273.

¶13    Here, Fransway claims that Markquart violated WIS. STAT. § 427.104(1), which prohibits a "debt collector" from engaging in various practices "[i]n attempting to collect an alleged debt arising from a consumer credit transaction or other consumer transaction … where there is an agreement to defer payment."  The parties agree that Fransway cannot prevail on her claims under

§ 427.104(1) unless Markquart was acting as a "debt collector" for purposes of that statute.

¶14    As relevant here, the term "debt collector" is defined to mean "any person engaging, directly or indirectly, in debt collection." WIS. STAT. § 427.103(3). "Debt collection," in turn, means "any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer." Sec. 427.103(2). "Claim" means "any obligation or alleged obligation arising from a consumer transaction."[3] Sec. 427.103(1).

¶15    Under these definitions, Markquart was acting as a "debt collector" if it engaged in any action, conduct, or practice of soliciting for collection or collecting an obligation arising from a consumer transaction that was owed or due, or alleged to be owed or due, to a merchant by a customer. Fransway contends that because the debt she owed under the Installment Agreement was not validly assigned to Chase, "the debt at issue was contractually owed to Markquart." She then asserts that Markquart "was attempting to collect an additional $1,500" from her, even though she did not owe Markquart that amount. Fransway contends that "[a]sking for money is a collection action." She further asserts that Markquart "made it clear that if the money wasn't received, the vehicle would have to be returned." She argues that by asking her to pay an additional $1,500 in order to

---

[3] The parties do not dispute that the transaction at issue in this case qualified as a "consumer transaction" for purposes of WIS. STAT. § 427.104(1). Under the WCA, a "consumer transaction" means "a transaction in which one or more of the parties is a customer for purposes of that transaction." WIS. STAT. § 421.301(13). A "customer" is a person "who seeks or acquires real or personal property, services, money or credit for personal, family or household purposes." Sec. 421.301(17).

6

keep the vehicle, Markquart was engaging debt collection for purposes of WIS. STAT. § 427.104(1).

¶16    We reject this argument because the undisputed facts do not support Fransway's assertion that Markquart asked her to pay an additional $1,500 in order to keep the vehicle. Instead, the undisputed facts show that: (1) Miller told Fransway and Tyler that Chase had reversed its decision and would no longer provide financing for the transaction; (2) Miller discussed alternative options for financing through Chase or another lender with Fransway and Tyler and informed them that they would need to return the vehicle if they were not able to obtain that financing; and (3) Miller told Fransway that she might be able to obtain alternative financing through RCU, but RCU would require an additional down payment of $1,500.

¶17    These undisputed facts show that Markquart was not acting as a debt collector for purposes of WIS. STAT. § 427.104(1) because it was not attempting to collect an obligation arising from a consumer transaction that was owed or due, or alleged to be owed or due, to a merchant by Fransway. Critically, Fransway does not cite any evidence to support the proposition that Markquart claimed she owed $1,500 to anyone, much less to Markquart. Rather, the evidence shows that Miller merely informed Fransway of one alternative financing option, which he believed would require her to make an additional down payment of $1,500. Fransway does not cite any evidence that Miller told her she was required to pay that amount in order to keep the vehicle. In addition, Fransway does not cite any evidence to dispute Miller's averment that the $1,500 down payment would have merely reduced the total amount of Fransway's loan and would not have increased the amount that Markquart received in the transaction.

¶18 Fransway emphasizes that Miller stated she and Tyler would have to return the vehicle if they could not obtain alternative financing. She apparently believes that assertion was incorrect, and the lack of financing would not have required them to return the vehicle. Instead, Fransway appears to believe that the Installment Agreement was never validly assigned to Chase, and, as a result, after Chase refused to provide financing, Fransway would have simply been required to make the payments due under the Installment Agreement directly to Markquart. Fransway suggests that by seeking the return of the vehicle rather than allowing her to make those payments, Markquart "failed to honor a binding contract" with her.

¶19 This argument fails because Fransway has not asserted a breach of contract claim against Markquart—presumably because Fransway did not suffer any monetary damages as a result of Markquart's alleged breach, but instead saved over $2,700 in financing costs. Fransway does not explain how Markquart's alleged failure to honor its contract with her is relevant to determining whether Markquart was acting as a "debt collector" for purposes of the WCA. Notably, Markquart did not assert that Fransway and Tyler needed to return the vehicle because Fransway had failed to make payments required under the Installment Agreement. In other words, Markquart did not seek the return of the vehicle in order to recover an obligation owed by Fransway to Markquart, or to anyone else.

¶20 Under these circumstances, Markquart was not acting as a "debt collector" for purposes of WIS. STAT. § 427.104(1). Fransway's claims against Markquart for violations of that statute therefore fail as a matter of law. Accordingly, the circuit court properly granted Markquart summary judgment.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.