GRAF, by Guardian *ad litem*, Plaintiff and Respondent, v. BLOECHL and another, Defendants and Appellants: BORK and another, Defendants and Respondents: LANGKAU, d/b/a JOE'S MOBILE SERVICE STATION, Impleaded Defendant and Respondent.

*October 30—November 28, 1967.*

636

638

For the appellants there was a brief by *Fulton, Menn & Nehs,* attorneys, and *Peter S. Nelson* of counsel, all of Appleton, and oral argument by *Mr. Nelson.*

For the plaintiff-respondent there was a brief by *Patri, Nolan, Crane & Engler* and *Gary R. Yakes,* all of Oshkosh, and oral argument by *Mr. Yakes.*

BEILFUSS, J. This issue is whether Bloechl's insurance carrier, General Accident, can be named as a party defendant under the "direct action" statute (sec. 260.11 (1)).

The two pertinent statutes are:

"204.30 (4) Any bond or policy of insurance covering liability to others by reason of the *operation* of a motor vehicle shall be deemed and construed to contain the following conditions: That the insurer shall be liable to the persons entitled to recover for the death of any person, or for injury to person or property, irrespective of whether such liability be in praesenti or contingent and to become fixed or certain by final judgment against the insured, when caused by the negligent *operation, maintenance, use or defective construction of the vehicle* described therein, such liability not to exceed the amount named in said bond or policy." (Emphasis added.)

"260.11 (1) . . . In any *action* for damages caused by the *negligent operation, management or control of a motor vehicle,* any insurer of motor vehicles, which has an interest in the outcome of such controversy adverse to the plaintiff or any of the parties to such controversy, or which by its policy of insurance assumes or reserves the right to control the prosecution, defense or settlement of the claim or action of the plaintiff or any of the parties to such claim or action, or which by its policy agrees to prosecute or defend the action brought by the plaintiff or any of the parties to such action, or agrees to engage counsel to prosecute or defend said action, or agrees to pay the costs of such litigation, is by this section made

a proper party defendant in any action brought by plaintiff in this state on account of any claim against the insured. The right of direct action herein given against an insurer against liability for damages to persons other than the insured arising out of the negligent operation, management or control of a motor vehicle shall exist whether the policy of insurance sued upon was issued or delivered in the state of Wisconsin or not and whether or not the policy or contract of insurance contains a provision forbidding such direct action, provided the accident or injury occurred in the state of Wisconsin." (Emphasis added.)

In *Frye v. Angst* (1965), 28 Wis. 2d 575, 579, 137 N. W. 2d 430, we stated:

"Sec. 204.30 (4), Stats., provides for the direct *liability* of the insured to the injured party when the conditions of that section are met. Sec. 260.11 (1) is a procedural statute to allow direct *action* by the injured party against the insurer when the conditions of that section are met."

The legislative history of these two statutes was reviewed extensively in *Frye v. Angst, supra.* It was there held that sec. 260.11 and sec. 204.30 (4), Stats., were not coextensive and that in an action based on the negligent "maintenance" of a motor vehicle sec. 260.11 (1) does not apply permitting insurers to be joined directly as defendants.[2] Therefore, direct action can only be predicated upon the language of sec. 260.11 (1). The narrow question upon which the issue turns is whether the act of defendant Bloechl in attempting to start the

[2] This court stated in the *Frye Case, supra,* that sec. 260.11 (1), Stats., could not be construed beyond the scope of the legislature's intention as it appeared from the language used in the statute, and that if sec. 260.11 (1) was to be broadened it should be amended by the legislature, not by strained judicial construction. In response, the legislature amended sec. 260.11 (1), including therein the language of sec. 204.30 (4), viz.: "Maintenance, use or defective construction." (Ch. 14, Laws of 1967, published March 31, 1967.) This amendment did not exist at the time of the accident in the case at bar. Retroactivity is not an issue herein.

car was an act of "operation, management or control" within the meaning of sec. 260.11 (1), or whether Bloechl and Bork were engaged in "maintenance" of the vehicle.

Several recent cases which construe sec. 260.11, Stats., were reviewed in *Farmers Mut. Ins. Co. v. Fischer* (1967), 34 Wis. 2d 322, 327, 328, 149 N. W. 2d 566. The discussion of those cases need not be restated here. They do point out that this court has adopted a rule of liberal construction of sec. 260.11 (1). However, a liberal construction can go no further than the scope of the words of the statute. The common thread running through these cases is that the act claimed to be negligent must be reasonably related to the actual use as a motor vehicle to be included within the statutory words "operation, management or control."

Under usual circumstances the starting of a motor vehicle would be considered an act reasonably related to the use of the vehicle. However, the usual circumstances are not before the court in the case at bar. Even though it is alleged that one reason Bloechl was attempting to start the car was to take himself and the others swimming, this was not Bloechl's primary or immediate purpose. The vehicle was inoperable; it had been towed to the service station. He first intended to complete repairs. The engine had not been timed so that it would run properly, if at all, before the accident occurred. Graf alleges that the engine "turned over," but whether it "turned over" by virtue of engaging the starter motor or whether it did so independently does not appear. In any event, merely because the engine "catches" and "turns over" does not necessarily mean that it is capable of being operated on the highway. The timing adjustments still had to be made before the automobile was usable. Further, the engine at this time was not completely assembled. The air cleaner was not in place and the rocker arm cover on one side of the engine had not been replaced. It is difficult to believe

that it was Bloechl's intention to drive the car when he attempted to start it in view of the work remaining to put the car in proper order. It is highly probable that the car would have been turned off after the adjustments were made if not to replace the disassembled parts, to see if it would start properly.

The only reasonable conclusion under these circumstances is that Bloechl's primary intention and purpose in attempting to start the car was to finish the repairs. The attempted starting of the car in this situation cannot be considered to be a "use" or "operation, management or control" of the motor vehicle.

In *Gullickson v. Western Casualty & Surety Co.* (1962), 17 Wis. 2d 220, 116 N. W. 2d 121, this court considered on near identical facts whether an automobile was being "used." The insurance policy in that case covered accidents occurring in the service station involved, but excluded coverage of accidents connected with the use of an employee's vehicle. Nelson and Dennis, employees, were working on Nelson's car attempting to start it in exactly the same manner used in the case at bar (pouring gasoline into the open carburetor to prime the engine). The gasoline ignited when Nelson turned on the ignition. The court held that under these circumstances this could not be considered a "use" of the employee's vehicle. The court said, at pages 223, 224:

"We are not so satisfied that the attempt to start the motor, including turning on the ignition, under the circumstances was a 'use' of the automobile, whether or not such automobile was owned by an employee or a third party.

". . .

". . . From what we have just said it certainly cannot be held as a matter of law that Nelson's activities constituted a use of the automobile which he was trying to start. Although, if pressed, we would be inclined to hold as a matter of law this activity was not a *use* of the car . . . ."

And in *Frye v. Angst, supra,* at page 582, this court said:

" 'Maintenance' of an automobile has never been considered a part of operation, or of management and control. *Maintenance connotes a state of physical repair; management and control refers to the manner of its use.* And even in their dictionary senses these words do not readily admit of the inclusion of maintenance." (Emphasis supplied.)

The attempt to start the motor in the case at bar was a part of the process of repair and consequently an act of "maintenance," not "use, operation, management or control" of the vehicle. Sec. 260.11 (1), Stats., does not, therefore, contravene the "no-action" clause in the insurance contract. General Accident Fire & Life Assurance Corporation should be dismissed as a party to the action.

*By the Court.*—Order reversed with directions to grant the motion for summary judgment and enter judgment dismissing the complaint as to the defendant General Accident Fire & Life Assurance Corporation.