Patricia A. HAKE, Plaintiff-Appellant,

TRAVELERS INDEMNITY COMPANY, Subrogated-Plaintiff,

v.

Patricia ZIMMERLEE, Allstate Insurance Company and Heritage Mutual Insurance Company, Defendants-Respondents,

Susan B. CONRAD, and American Family Mutual Insurance Company, Defendants.

Court of Appeals

*No. 91–2675. Submitted on briefs February 8, 1993.—Decided July 27, 1993.*

(Also reported in 504 N.W.2d 411.)

417

418

For plaintiff-appellant the cause was submitted on the briefs of *Donald Roy Fraker* of *Starobin & Associates, S.C.*, of Thiensville.

For defendants-respondents Patricia Zimmerlee and Allstate Insurance Company the cause was submitted on the briefs of *James J. Kriva* and *John E. Cain* of *Kasdorf, Lewis & Swietlik, S.C.*, of Milwaukee.

For defendants-respondents Patricia Zimmerlee and Heritage Mutual Insurance Company the cause was submitted on the briefs of *Charles H. Bohl* and *Erika T. Flierl* of *Frisch Dudek, Ltd.*, of Milwaukee.

Before Sullivan, Fine and Schudson, JJ.

SULLIVAN, J.   Patricia Hake appeals from a summary judgment dismissing her personal injury action against coemployee Patricia Zimmerlee. The sole issue on appeal is whether the trial court properly granted summary judgment based on its conclusion that Hake could not maintain an action against her coemployee under sec. 102.03(2), Stats. We conclude that the trial court properly granted summary judgment.

The undisputed facts show that on June 11, 1987, while preparing to go to a business-related lunch,[1] Zimmerlee closed the front passenger door of a passenger van on Hake's hand as Hake was entering the rear door of the vehicle. The van was driven by another coemployee, Susan Conrad, and owned by Conrad's father.

---

[1] In Hake's contested claim, the Wisconsin Department of Industry, Labor & Human Relations, Worker's Compensation Division, determined that her injury was compensable under the Worker's Compensation Act. Hake received Worker's Compensation benefits for her injuries.

Hake's amended complaint charged Zimmerlee with causal negligence. Generally, an employee's exclusive remedy for a job-related injury lies under Wisconsin's Worker's Compensation Act. The rule of exclusivity and its exceptions are found in sec. 102.03(2), Stats., which provides in part:

[T]he right to the recovery of compensation under this chapter shall be the exclusive remedy against the employer, any other employe of the same employer and the worker's compensation insurance carrier. This section does not limit the right of an employe to bring action against any coemploye for an assault intended to cause bodily harm, *or against a coemploye for negligent operation of a motor vehicle not owned or leased by the employer*, or against a coemploye of the same employer to the extent that there would be liability of a governmental unit to pay judgments against employes under a collective bargaining agreement or a local ordinance.

Section 102.03(2), Stats. (emphasis added).

We are asked to determine whether Zimmerlee's act of closing the van door on Hake's hand was the "operation of a motor vehicle" as provided in sec. 102.03(2), Stats. If Zimmerlee's action did not constitute the "operation of a motor vehicle," then Hake could not maintain an action against her and the summary judgment was properly granted. We conclude that Zimmerlee's act of closing the door on Hake's hand does not fall within the definition of "operation of a motor vehicle" as that phrase is used in sec. 102.03(2).

On review of summary judgment, we apply the standards prescribed by sec. 802.08(2), Stats., in the same manner as the circuit court. *Disrud v. Arnold,*

167 Wis. 2d 177, 181–82, 482 N.W.2d 114, 116 (Ct. App. 1992). We accord no deference to the trial court's conclusions. *Id.* The methodology for summary judgment was comprehensively set forth by the supreme court in *Dobratz v. Thomson,* 161 Wis. 2d 502, 512–13, 468 N.W.2d 654, 657–58 (1991), and we need not repeat it here. The relevant facts are undisputed, and therefore, we only address whether Zimmerlee was entitled to summary judgment as a matter of law in light of sec. 102.03(2), Stats. *See* sec. 802.08(2), Stats. Construction of a statute and its application to a particular set of facts is a question of law that we review *de novo. Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773, 778 (1989).

The word "operation" has different meanings depending on the context in which it is used. *Lukaszewicz v. Concrete Research, Inc.*, 43 Wis. 2d 335, 342, 168 N.W.2d 581, 585 (1969). The meaning of the phrase "operation of a motor vehicle," as used in sec. 102.03(2), Stats., however, cannot be readily discerned by its context. Even in that context the phrase is ambiguous, i.e., subject to "more than one reasonable, although not necessarily correct," interpretation. *See West Allis School Dist. v. DILHR*, 116 Wis. 2d 410, 418–19, 342 N.W.2d 415, 420 (1984). To find the meaning of a phrase or word that is ambiguous, we must determine the intent of the legislature through an examination of the statute's "scope, history, context, subject matter, and object to be accomplished." *Id.* at 419, 342 N.W.2d at 420–21.

With regard to the Worker's Compensation Act in general, this court has explained: "One purpose of the Worker's Compensation Act is to allocate the cost of employment injuries to the industry or business in

421

which they occur and, ultimately, to the consuming public as part of the price for the goods or services offered." *Oliver v. Travelers Ins. Co.*, 103 Wis. 2d 644, 648, 309 N.W.2d 383, 385 (Ct. App. 1981). Nonetheless, before 1977, sec. 102.03(2), Stats., precluded suits against the employer and worker's compensation insurance carrier, but did not prohibit an employee from suing a coemployee for a work-related injury. *See* sec. 102.03(2), Stats. (1975).[2] In 1977, however, the legislature made revisions to the Worker's Compensation Act in accordance with recommendations of the Worker's Compensation Advisory Council. *See Oliver*, 103 Wis. 2d at 648, 309 N.W.2d at 385. The statute was repealed and recreated to prohibit most work-related injury suits between coemployees. Section 2, ch. 195, Laws of 1977. At the time the bill was presented to the legislature, the Council presented its written document entitled "Explanation of Worker's Compensation Advisory Council Bill," which included the following statement:

> The Advisory Council recommends amendment to Wisconsin Statutes 102.03(2) to prohibit most suits by an employe against a co-employe. It would permit a suit where there was an assault by the co-employe or where there was negligent operation of a motor vehicle not owned or leased by the employer. It is a fact that virtually all insurance policies issued to employers ᴊᵣ public liability or for fleet coverage on employer owned or leased vehicles exclude payment of damages where the claim of an employe is against a co-employe. The result is that

---

[2] Section 102.03(2), Stats. (1975), provided: "[T]he rights to the recovery of compensation pursuant to this chapter shall be the exclusive remedy against the employer and the worker's compensation insurance carrier."

the employe who is being sued is left without protection and the little person is the one who gets hurt. The attention of the Advisory Council has been called to cases where . . . [the co-employe] who was sued was placed in a financial position[,] because of the cost of defending or because of the judgment for damages that was recovered[,] that the employe would not be able to recover from financially for many years or for the balance of his life.

■

It is apparent that the main concern of the Advisory Council was the financial burden that coemployee suits imposed upon workers. Thus, the Council advised the legislature to recreate the statute so that coemployee immunity would be the rule, and coemployee liability would be the exception to that rule. In examining the purpose behind coemployee immunity this court has explained: "Injuries caused by a negligent coemployee are everyday occurrences. Such injuries are directly related to the employment, and pursuant to the stated purpose or objective of the Worker's Compensation Act, the costs should be passed on to the consuming public." *Oliver*, 103 Wis. 2d at 648, 309 N.W.2d at 385. Because of the strong policy concerns that underlie the rule of coemployee immunity, we construe exceptions to that statutory rule narrowly. *Cf. Belleville State Bank v. Steele*, 117 Wis. 2d 563, 570, 345 N.W.2d 405, 409 (1984) ("When a statute is ambiguous, the legislature is presumed to have intended an interpretation that advances the purposes of the statute.").

One of the exceptions that the legislature made to the general rule of coemployee immunity was for "negligent operation of a motor vehicle not owned or leased by the employer." Although the legislative history does

not expressly provide a reason for allowing suits for "negligent operation of a motor vehicle," it does explain why the vehicle in question cannot be owned or leased by the employer-employers' automobile insurance policies usually do not provide coverage for coemployee suits. Presumably, the legislature believed that where the vehicle was not owned or leased by the employer, the vehicle would be privately insured, and would have liability coverage for "negligent operation of a motor vehicle." The next logical step toward determining what the legislature intended is to look to the meaning of "operation of a motor vehicle" in the context of automobile liability insurance.[3]

"[T]here is considerable authority to the effect that the word 'operate,' as used in an automobile liability policy, means to regulate and control the actual operation of the car, that is, to have charge of it as a driver, . . . there is also authority to the effect that a vehicle may be 'operated,' within the meaning of a liability policy, by one who is in the vehicle and exercises some control over it, although not in the driver's seat." 12 COUCH ON INSURANCE § 45:44 (2d ed. 1981) (footnotes omitted). Cases that extend the definition of "operate" to include actions of a passenger of a vehicle generally involve a passenger who either owns the vehicle, is directing the driver of the vehicle with respect to the destination, or is teaching the driver how to drive. *See id.*; Annotation, *Meaning of "Operate" or "Being Operated" Within Clause of Automobile Liability Policy*

---

[3] At this point we stress the fact that we are not confronted with the term "operation" as it would appear in an insurance policy. We address the issue only tangentially, and use it only to provide perspective. We express no opinion on the meaning of the word "operate" or the phrase "operation of a motor vehicle" as it may appear in an automobile liability policy.

*Limiting Its Coverage*, 51 A.L.R.2d 924, 928–30 (1957). The use of the word "operate" in insurance policies is not, however, the only indicator of the meaning of the word as used in sec. 102.03(2), Stats., and indeed may not be the best indicator because of the general practice of construing ambiguities in insurance policies broadly and in favor of coverage for the insured. *See Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597, 598 (1990). As we have already explained, the word "operate," as used in sec. 102.03(2), logically requires narrow construction based on its legislative history.

We look next to the use of the words "operate" and "operation" as employed by the legislature in other insurance-related statutes. At the time sec. 102.03(2), Stats., was repealed and recreated to include coemployee immunity, the Wisconsin Statutes contained sec. 632.32(2)(b), Stats. (1977), which made specific provisions mandatory in all automobile liability insurance issued or delivered in this state, and sec. 632.34(2), Stats. (1977), which prohibited certain exclusions from liability policies. Both of those sections used the words "operation" and "operating" in phrases such as "while riding in or operating," "riding, use or operation," and "operation, manipulation or use of the motor vehicle." From the legislature's use of these various phrases, we conclude that it was attempting to describe different, yet not necessarily mutually exclusive, activities that one can perform with regard to a motor vehicle. That is to say, one can be riding in a vehicle without operating it. "One does not have to be driving or operating an automobile to be using it." *Blashaski v. Classified Risk Ins. Corp.*, 48 Wis. 2d 169, 174, 179 N.W.2d 924, 926 (1970).

In 1979, the legislature repealed and combined secs. 632.32 and 632.34, Stats. (1977), removing all references to "operation," "riding," and "manipulation," and replacing all such references with the more encompassing word "using." *See* sec. 632.32, Stats. (1979–80); Sections 171 and 172, ch. 102, Laws of 1979. "Using" was defined by that revised statute to include "driving, operating, manipulating, riding in and any other use," and remains so defined in the current statute. *See* sec. 632.32(2)(c), Stats. (1979–80) & (1991–92). Thus, through sec. 632.32(2)(c), Stats., the legislature requires automobile liability insurance policies to provide coverage for more than the "operation" of a motor vehicle, as indicated by its use of terms such as "using" a motor vehicle. The legislature did not, however, employ that same broad term when enacting the rule of coemployee immunity along with the corresponding exception for "negligent operation of a motor vehicle" under sec. 102.03(2), Stats., nor has the legislature revised the statute to include that broader meaning since its enactment.

■

Because the legislature could have, but chose not to employ the word "using," instead of the word "operation," and because we are to narrowly construe the exception to the coemployee immunity rule, we conclude that Zimmerlee's act of closing the door on Hake's hand was outside the scope of the phrase "operation of a motor vehicle," as that term is used in sec. 102.03(2), Stats.

We affirm the trial court's grant of summary judgment because this case presents no issues of material fact and the trial court correctly decided that Zimmerlee was entitled to summary judgment as a matter of law.

*By the Court.*—Judgments affirmed.