Lee J. KUEHL, Kelly J. Kuehl and Grace M. Kuehl, by her Guardian ad Litem, Ralph J. Tease, Plaintiffs-Appellants,†

v.

SENTRY SELECT INSURANCE COMPANY, Defendant-Respondent,

ABC INSURANCE COMPANY, Defendant.

Court of Appeals

*No. 2008AP1681. Submitted on briefs January 13, 2009.
—Decided February 10, 2009.*

**2009 WI App 38**

(Also reported in 765 N.W.2d 860.)

† Petition to review denied 6/16/09.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Ralph J. Tease, Jr.* and *Rhonda J. Lanford* of *Habush, Habush & Rottier, S.C.* of Green Bay.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Kevin A. Christensen* of *Leib & Katt, LLC* of Milwaukee.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. HOOVER, P.J. Lee Kuehl[1] appeals a summary judgment dismissing his action because it was barred by the exclusive remedy provision of the Worker's Compensation Act. Kuehl argues the circuit court erroneously applied the negligent operation of a motor vehicle exception to coemployee immunity. We disagree and affirm.

## BACKGROUND

¶ 2. Kuehl, a service manager at Broadway Automotive, was injured when a customer's panel van that was in for repair of a fuel leak fell off a vehicle hoist. Andrew DeMerritt, a mechanic at Broadway, had driven the van into the service bay and between the two hoist posts, placed it in park, turned off the ignition, and exited the vehicle. He then swung the four hoist arms beneath the van, positioned the arms' support pads, and raised the vehicle off the ground. Because it was unstable, he lowered the van and repositioned the rear hoist arms and pads. DeMerritt then raised the vehicle to a position about three feet off the ground and left the service bay to get Kuehl. The two men returned within

---

[1] Kelly and Grace Kuehl are also parties to the lawsuit and this appeal.

a matter of minutes. As they were looking under the vehicle, the back end tipped off the hoist and struck Kuehl.

¶ 3.  Kuehl retained an engineer, Dennis Skogen, who reconstructed the accident. Skogen opined DeMerritt did not drive the vehicle far enough ahead to be able to properly position the hoist arms beneath it relative to its center of gravity. Skogen also concluded DeMerritt improperly positioned the rear hoist arms' support pads beneath the vehicle's leaf springs rather than the frame. However, Skogen concluded the rear support pads could have been placed against the frame even with the vehicle resting where DeMerritt parked it.

¶ 4.  Kuehl brought a direct action suit against Sentry Select Insurance Company, which insured De-Merritt under Broadway's commercial liability policies. The circuit court granted Sentry's motion for summary judgment, holding the exclusive remedy provision of the Worker's Compensation Act barred Kuehl's claim.[2]

## DISCUSSION

¶ 5.  This court independently analyzes summary judgment motions, applying the same methodology as the circuit court. *Strozinsky v. School Dist. of Brown Deer*, 2000 WI 97, ¶ 32, 237 Wis. 2d 19, 614 N.W.2d 443. Summary judgment is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. WIS. STAT.

---

[2] However, because the first-level liability policy waived the exclusive remedy provision, Sentry tendered the $500,000 policy limit to Kuehl. The summary judgment motion at issue here dealt only with the umbrella policy.

§ 802.08(2).[3] A statute's application to a particular set of facts is a question of law. *Maxey v. Redevelopment Auth. of Racine*, 120 Wis. 2d 13, 18, 353 N.W.2d 812 (Ct. App. 1984). When reviewing a summary judgment motion, we construe the facts and all reasonable inferences in the nonmoving party's favor. *Strozinsky*, 237 Wis. 2d 19, ¶ 32.

¶ 6. The exclusive remedy provision of the Worker's Compensation Act states:

> Where [the conditions under subsec. (1)] exist the right to the recovery of compensation under this chapter shall be the exclusive remedy against the employer, any other employee of the same employer and the worker's compensation insurance carrier. This section does not limit the right of an employee to bring action against . . . a coemployee for negligent operation of a motor vehicle not owned or leased by the employer . . . .

WIS. STAT. § 102.03(2).

¶ 7. Kuehl contends DeMerritt negligently operated the vehicle within the meaning of WIS. STAT. § 102.03(2) when he drove it into the service bay and negligently positioned it between the lift posts. He asserts the statute does not require the negligent operation to occur simultaneously with an injury. Rather, Kuehl argues the operation of the vehicle need only be a substantial factor causing the injury.

¶ 8. The negligent operation of a motor vehicle exception in WIS. STAT. § 102.03(2) has been addressed in two prior cases. In the first, this court concluded a coemployee's act of closing a van door on a person's hand did not constitute "operation of a motor vehicle." *Hake v. Zimmerlee*, 178 Wis. 2d 417, 420, 504 N.W.2d

---

[3] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

411 (Ct. App. 1993). We concluded the phrase was ambiguous in context and proceeded to examine the legislative history. *Id.* at 421.

¶ 9.   The Worker's Compensation Act is intended to " 'allocate the cost of employment injuries to the industry or business in which they occur and, ultimately, to the consuming public as part of the price for the goods or services offered.' " *Id.* at 421–22 (quoting *Oliver v. Travelers Ins. Co.*, 103 Wis. 2d 644, 648, 309 N.W.2d 383 (Ct. App. 1981)). Due in part to the legislature's concern over the financial burden coemployee suits imposed upon workers, we concluded we must narrowly construe the exception to coemployee immunity. *Id.* at 423.

¶ 10.   Our supreme court then addressed the negligent operation of a motor vehicle exception in *McNeil v. Hansen*, 2007 WI 56, 300 Wis. 2d 358, 731 N.W.2d 273. There, two service station employees were performing routine maintenance on a vehicle. *Id.*, ¶ 3. They hooked the vehicle up with hoses to a machine to flush the radiator, and one of them reached in through the window to start the engine. *Id.* The engine had to be running for the machine to function. *Id.* The vehicle had a manual transmission and when the employee turned the ignition switch, the vehicle lurched forward and struck the coemployee. *Id.*

¶ 11.   The court agreed with the conclusion in *Hake* that the phrase "operation of a motor vehicle" in Wis. Stat. § 102.03(2) is ambiguous, *McNeil*, 300 Wis. 2d 358, ¶ 11, and should be interpreted narrowly. *Id.*, ¶ 16. The court then set out to "more specifically define" the phrase. *Id.* It first concluded various statutory definitions were inapplicable because of the differing purposes of those statutes. *Id.*, ¶¶ 16–19. The court

next recognized that some cases had distinguished the operation of a vehicle from "actions associated with the maintenance or repair of a vehicle," *id.*, ¶ 20, and concluded the distinction should apply in this context as well:

> Injuries to workers caused by negligent coemployees while performing maintenance or repairs on a motor vehicle that could not then be driven on a public roadway are common occurrences for those workers in the vehicle maintenance and repair industry. They are directly related to their employment. Therefore, the costs of these injuries should be passed on to the industry and ultimately the consuming public; they should not be born by the worker.

*Id.*, ¶ 23. The court, however, did not further define "operation of a motor vehicle" in its decision.[4]

¶ 12.    With the principles set forth in *McNeil* and *Hake* in mind, we conclude DeMerritt's placement of the vehicle on the hoist did not constitute negligent operation of a motor vehicle under Wis. Stat. § 102.03(2). We disagree with Kuehl's assertion that the question is whether the operation of the vehicle was causal. The real issue is whether DeMerritt's actions constituted negligent "operation" under the statute.

---

[4] A concurring opinion stated:

The court's decision does not provide the answer to other fact situations because the court, like the statute, does not define specifically or generally what "operation of a motor vehicle" means under Wis. Stat. § 102.03(2). . . . .

Today's opinion decides this case. Different conduct will be evaluated on a case-by-case basis—not on a standard set forth in the instant case.

*McNeil v. Hansen*, 2007 WI 56, ¶¶ 31, 33, 300 Wis. 2d 358, 731 N.W.2d 273 (Abrahamson, C.J., concurring).

¶ 13.   Kuehl stresses DeMerritt was operating the vehicle when he positioned it between the hoist posts. There is a distinction, however, between operating a vehicle and placing a vehicle on a hoist for repairs. The alleged negligence here was the way the vehicle was positioned on the hoist; that negligence is independent of *how* the vehicle was operated. *See McNeil*, 300 Wis. 2d 358, ¶ 21 (operation of a vehicle refers to the manner of its use). Under any definition of operation, DeMerritt's manipulation of or control over the vehicle, its movement, or its instruments was not negligent in and of itself.[5]

¶ 14.   As the court stated in *McNeil*, there is "a common sense understanding that there is an inherent difference between repairing a vehicle and operating or using it." *Id.*, ¶ 22. The positioning of a vehicle on a hoist is clearly an action "associated with . . . maintenance or repair," *id.*, ¶ 20, and we are to narrowly construe the exception in favor of coemployee immunity. Additionally, discussing prior cases, *McNeil* recognized the intent of the actor is relevant to whether the action is classified as operation or maintenance and repair. *Id.*, ¶ 21 n.11. Here, DeMerritt's prior operation of the vehicle was merely incidental to his "primary intention and purpose" to raise the vehicle off the ground to conduct repairs. *Id.*, ¶ 21. The positioning of the vehicle on the hoist was an integral "part of the process of repair and consequently an act of 'mainte-

---

[5] The broadest definition of "operation" recognized in *McNeil* was that in a snowmobile safety statute, which defines operate as "the exercise of physical control over the speed or direction of a [vehicle] or the physical manipulation or activation of any of the controls of a [vehicle] necessary to put it in motion." Wis. Stat. § 350.01(9r); *McNeil*, 300 Wis. 2d 358, ¶ 19.

nance,' " not operation. *Id.* (quoting *Graf v. Bloechl*, 36 Wis. 2d 635, 643, 154 N.W.2d 340 (1967)).

¶ 15.  Because we specifically conclude DeMerritt did not negligently operate the vehicle under any definition, it is unnecessary to address the second, "could not then be driven," condition discussed in *McNeil*.[6] However, because the issue is likely to arise in future cases, we briefly discuss it. This case is plainly different from *McNeil* and *Hake* because, in each of those cases, there was a distinct action leading to an immediate injury. That is not the case here, because Kuehl focuses on the action of driving the vehicle into the service bay and parking it between the hoist supports. Given this difference, it is not immediately apparent how to apply the "could not then be driven on a public roadway" condition. *McNeil*, 300 Wis. 2d 358, ¶ 23. Specifically, it is not clear if "then" refers to the time of the negligent operation or the time of the injury.[7]

---

[6] It may be unnecessary to address the "could not then be driven" condition regardless of our resolution of this case. The *McNeil* decision does not specifically state it is creating a new standard to apply in future cases, as opposed to merely emphasizing the facts present in that case. *McNeil*, 300 Wis. 2d 358. As set forth above, the concurring opinion specifically states the decision does not create such a standard. *Id.*, ¶ 33 (Abrahamson, C.J., concurring).

[7] Additionally, *McNeil* does not discuss what qualifies as a vehicle that "could not then be driven on a public roadway." *McNeil*, 300 Wis. 2d 358, ¶ 23. There, the vehicle was in for routine maintenance but could not then physically be driven because it was hooked up to a machine. *Id.*, ¶ 2. In *Graf*, an inoperable truck had been towed to a service station for repairs. *Graf v. Bloechl*, 36 Wis. 2d 635, 154 N.W.2d 340 (1967). Here, the vehicle was operable when driven into the service bay, but it arguably could not have been *safely* driven on public roads because it had a gas leak.

514

¶ 16. *McNeil* restates the "could not then be driven" or "while it could not be driven" condition numerous times in various contexts. *See id.*, ¶¶ 2, 23, 28, 29. Considering the purposes of the statute, we interpret *McNeil* such that "then" refers to the time the tort claim accrued.[8] Given this interpretation, the condition existed here. The vehicle could not then be operated on a public roadway because it was raised three feet off the ground on a hoist when the injury occurred.

*By the Court.*—Judgment affirmed.

---

[8] Since, as alleged here, there may be numerous negligent, causal actions, this interpretation appears the most reasonable. Indeed, in *McNeil*, the court only discussed the definition of "operation," independent of the modifying term "negligent." *McNeil*, 300 Wis. 2d 358. In addition to turning the ignition, it appears likely there was prior negligence in failing to engage the parking brake and place the transmission in neutral when the vehicle was parked. Presumably, the vehicle would not have been connected to the radiator flushing machine yet and, therefore, would have *then* been drivable on public roads.