E-Z Roll Off, LLC, Plaintiff-Appellant,

v.

County of Oneida, Defendant-Respondent.†

Court of Appeals

*No. 2009AP775. Submitted on briefs January 12, 2010.
—Decided May 11, 2010.*

2010 WI App 76

(Also reported in 785 N.W.2d 645.)

† Petition for Review granted 9/24/10.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James B. Connell* of *Crooks, Low & Connell, S.C.* of Wausau.

On behalf of the defendant-respondent, the cause was submitted on the brief of *John T. Juettner* of *Crivello Carlson, S.C.* of Milwaukee.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. HOOVER, P.J. E-Z Roll Off, LLC, appeals a judgment dismissing its complaint for failure to provide Oneida County a timely notice of injury and claim as required by WIS. STAT. § 893.80(1).[1] E-Z Roll Off primarily argues its WIS. STAT. ch. 133 antitrust claim was exempt from the statutory notice requirements. If not exempt, then E-Z Roll Off contends its notice was timely because there was a continuing violation. As its final alternative, E-Z Roll Off asserts Oneida County had actual notice and was not prejudiced by the failure to give the statutory notice. We agree ch. 133 antitrust claims are exempt from § 893.80(1)'s notice requirements and, therefore, reverse the judgment and remand.

## BACKGROUND

¶ 2. E-Z Roll Off was in the solid waste hauling business, providing dumpsters to its customers. In June 2003, Oneida County executed an agreement with another waste hauling company, Waste Management, Wis-

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

consin, Inc. As part of that agreement, Waste Management was charged a preferential $5.25 per ton rate for waste it delivered to the County's transfer station. Other waste haulers, including E-Z Roll Off, were charged $44 or $54 per ton, depending on whether the hauler delivered enough waste to the County annually to earn a rebate.

¶ 3. E-Z Roll Off's owners, Todd and Paula Laddusire, were unaware of the Waste Management contract until February 2004, when one of their employees inadvertently saw a scale ticket showing Waste Management's rate.[2] The Laddusires promptly requested a meeting with the County's solid waste director, Bart Sexton. At a February 17, 2004 meeting, the Laddusires expressed their concerns with the Waste Management contract, opining it created a monopoly and stating they would take their waste elsewhere unless the County reduced E-Z Roll Off's disposal rate. Sexton refused to reduce E-Z Roll Off's rate.

¶ 4. The Laddusires then filed complaints with various governmental entities, including the Wisconsin Department of Agriculture, Trade, and Consumer Protection. As a remedy, the complaint requested reimbursement of "the amount . . . paid over [$]5.25/ton, . . . which is about [$]98,000," and that "the monopoly . . . be broken [and] criminal charges filed against all parties involved." The Department forwarded a copy of the complaint to the County landfill, but took no further

---

[2] The County disputes this fact, asserting the Laddusires were aware of the contract when it was created. However, because summary judgment was granted to the County, the facts must be construed in E-Z Roll Off's favor. *See Kuehl v. Sentry Select Ins. Co.*, 2009 WI App 38, ¶ 5, 316 Wis. 2d 506, 765 N.W.2d 860. Regardless, the fact is not critical to our decision.

action. The Department's cover letter indicated the County had the option to provide a response, which the Department would place in its file. Sexton replied to the complaint, which he had received May 8, 2004, in a letter to the Department and the Laddusires. Sexton asserted the Laddusires were always aware of the contract terms, and stressed the contract resulted from an open bidding process. He also denied the Laddusires' claim that payments had been made "under the table."

¶ 5. On September 28, 2005, E-Z Roll Off filed with the County a notice of injury alleging violations of WIS. STAT. ch. 133, and a statement of claim indicating a loss of $1,199,100.45 in past and future lost earnings. The claim was disallowed and E-Z Roll Off filed the present action on April 20, 2006. Ultimately, the circuit court granted the County's motion for summary judgment, dismissing the case. The court concluded WIS. STAT. § 893.80(1)'s notice requirements applied, E-Z Roll Off's notice was not timely, and E-Z Roll Off failed to demonstrate actual notice and lack of prejudice.

## DISCUSSION

¶ 6. WISCONSIN STAT. § 893.80(1) sets forth two prerequisites to bringing an action against a governmental body such as Oneida County, a notice of injury, § 893.80(1)(a), and a notice of claim, § 893.80(1)(b).[3] The notice of injury must be given "[w]ithin 120 days after the happening of the event giving rise to the claim," and supply "written notice of the circumstances of the claim." WIS. STAT. § 893.80(1)(a). However, "[f]ail-

---

[3] WISCONSIN STAT. § 893.80(1)(a) actually uses the word "claim," not "injury." The case law, however, recognizes this component of the statute as the notice of injury. *Vanstone v. Town of Delafield,* 191 Wis. 2d 586, 591 n.5, 530 N.W.2d 16 (Ct. App. 1995).

ure to give the requisite notice shall not bar action on the claim if the [county] had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the [county]." *Id.* The purpose of the para. (1)(a) notice of injury is to notify the governmental entity of the potential claim so that it might investigate and evaluate. *Griffin v. Milwaukee Transp. Servs., Inc.*, 2001 WI App 125, ¶¶ 14–15, 246 Wis. 2d 433, 630 N.W.2d 536.

■■

¶ 7. The notice of claim, on the other hand, is not subject to any filing deadline. *Vanstone v. Town of Delafield*, 191 Wis. 2d 586, 593, 530 N.W.2d 16 (Ct. App. 1995); *see also Thorp v. Town of Lebanon*, 2000 WI 60, ¶ 28, 235 Wis. 2d 610, 612 N.W.2d 59. That notice is to contain the claimant's address and "an itemized statement of the relief sought," and no action may be brought until the claim has been disallowed. WIS. STAT. § 893.80(1)(b). A claim is deemed disallowed if the county fails to respond within 120 days. WIS. STAT. § 893.80(1g). The purpose of the para. (1)(b) notice of claim is to afford the governmental entity an opportunity to effect compromise without suit, and to budget for settlement or litigation. *Griffin*, 246 Wis. 2d 433, ¶¶ 14–15.

¶ 8. Our supreme court has held WIS. STAT. § 893.80(1)'s notice provisions apply generally to all actions, not just those in tort or those for money damages. *See DNR v. City of Waukesha*, 184 Wis. 2d 178, 191, 515 N.W.2d 888 (1994), *overruled in part by State ex rel. Auchinleck v. Town of LaGrange*, 200 Wis. 2d 585, 597, 547 N.W.2d 587 (1996) (holding the "all actions" language was overbroad). However, the court held substantial compliance with the statute was sufficient. *Id.* at 198.

¶ 9. Two years later, in *Auchinleck*, 200 Wis. 2d at 596, the supreme court nonetheless held Wis. Stat. § 893.80(1)'s notice requirements do not apply to open records and open meetings actions because the statutes were conflicting, primarily because the open records and meetings laws specify procedures for immediate relief. The court also rejected the Town's argument that effect must be given to the notice statute's intent to afford a municipality an opportunity to settle the claim without litigation. *Id.* at 593, 595–96. It reasoned that "allowing a municipality an additional 120 days to contemplate how to respond to an open records or open meetings enforcement action in large part duplicates the process in which it already engaged prior to its initial response [denying the records request or deciding to hold a closed meeting]."[4] *Id.* at 596.

¶ 10. Subsequently, in *Gillen v. City of Neenah*, 219 Wis. 2d 806, 821–22, 826–27, 580 N.W.2d 628 (1998), the supreme court held Wis. Stat. § 893.80(1)(b) does not apply to public trust doctrine cases, primarily because the relevant statute specifically mentions injunctive relief. The statute at issue there states in its entirety: "Every violation of this chapter is declared to be a public nuisance and may be

---

[4] In *State ex rel. Auchinleck v. Town of LaGrange*, 200 Wis. 2d 585, 596, 547 N.W.2d 587 (1996), the court also observed: "Further, Wis. Stat. § 893.80(5) expressly states that specific rights and remedies provided by other statutes take precedence over the provisions of § 893.80." This effectively overruled the court's prior holding in *DNR v. City of Waukesha*, 184 Wis. 2d 178, 191–93, 515 N.W.2d 888 (1994), where the court had concluded subsec. (5) only applied to subsec. (3)'s damage caps, not subsec. (1)'s notice provisions. *Id.* at 192.

prohibited by injunction and may be abated by legal action brought by any person." WIS. STAT. § 30.294. The court explained:

> Wisconsin Stat. § 30.294 expressly allows a plaintiff to seek immediate injunctive relief to prevent injury. The enforcement procedures provided in § 30.294, are inconsistent with Wis. Stat. § 893.80(1)(b), which requires a plaintiff to provide a governmental body with a notice of claim, and to wait 120 days or until the claim is disallowed before filing an action. Therefore, the general application of § 893.80(1)(b) in this case frustrates the plaintiffs' specific right to injunctive relief under § 30.294.

*Gillen*, 219 Wis. 2d at 822. The court also relied in part on the nature of public trust doctrine cases, which are enforced on behalf of the state. *Id.* at 827.

¶ 11. Suffice it to say, since the *City of Waukesha* decision, Wisconsin courts "have identified [at least eight] statutes which provide specific procedures for bringing actions in which municipal entities are defendants or respondents, but to which the notice . . . requirement[s] of WIS. STAT. § 893.80(1) do[] *not* apply." *Oak Creek Citizen's Action Comm. v. City of Oak Creek*, 2007 WI App 196, ¶ 6, 304 Wis. 2d 702, 738 N.W.2d 168 (collecting six cases, and recognizing a seventh exception); *see also Kapischke v. Walworth County*, 226 Wis. 2d 320, 326–27, 595 N.W.2d 42 (Ct. App. 1999) (an eighth statutory exception recognized, not collected in *Oak Creek*).

██ ██

¶ 12. We apply the following three-factor "test," first set forth in *Town of Burke v. City of Madison*, 225 Wis. 2d 615, 625, 593 N.W.2d 822 (Ct. App. 1999), to determine on a case-by-case basis whether a particular

statutory claim is excepted from WIS. STAT. § 893.80's notice requirements:[5]

> (1) whether there is a specific statutory scheme for which the plaintiff seeks exemption;
>
> (2) whether enforcement of § 893.80(1) would hinder a legislative preference for a prompt resolution of the type of claim under consideration; and
>
> (3) whether the purposes for which § 893.80(1) was enacted would be furthered by requiring that a notice of claim be filed.

*Oak Creek*, 304 Wis. 2d 702, ¶ 7. Whether the notice provisions of WIS. STAT. § 893.80(1) apply to specific statutory actions is a question of statutory interpretation and presents a question of law that we determine independently of the circuit court. *Nesbitt Farms, LLC v. City of Madison*, 2003 WI App 122, ¶ 4, 265 Wis. 2d 422, 665 N.W.2d 379.

¶ 13. E-Z Roll Off, relying heavily on *Gillen*, argues for an exception to WIS. STAT. § 893.80(1)'s notice requirements for its WIS. STAT. ch. 133 antitrust claim. The primary focus here is on WIS. STAT. § 133.16, injunction; pleading; practice.[6] That section consists of a single, lengthy paragraph. In relevant part, it states:

---

[5] In *Town of Burke v. City of Madison*, 225 Wis. 2d 615, 625, 593 N.W.2d 822 (Ct. App. 1999), we merely observed that prior decisions had focused on three factors. In *Nesbitt Farms, LLC v. City of Madison*, 2003 WI App 122, ¶ 9, 265 Wis. 2d 422, 665 N.W.2d 379, we noted *Town of Burke* had identified three factors "which shed light on the question." Eventually, we referred to the three factors as a "test." *See Oak Creek Citizen's Action Comm. v. City of Oak Creek*, 2007 WI App 196, ¶ 7, 304 Wis. 2d 702, 738 N.W.2d 168.

[6] Although titles are not part of statutes, WIS. STAT. § 990.001(6), they may be helpful in interpretation. *Aiello v.*

Any circuit court may prevent or restrain, by *injunction* or otherwise, any violation of this chapter. The department of justice, any district attorney or any person by complaint may institute actions or proceedings to prevent or restrain a violation of this chapter, setting forth the cause and grounds for the intervention of the court and praying that such violation, whether intended or continuing be enjoined or prohibited. When the parties informed against or complained of have been served with a copy of the information or complaint and cited to answer it, the court *shall proceed, as soon as may be in accordance with its rules,* to the hearing and determination of the case; and pending the filing of the answer to such information or complaint may, *at any time, upon proper notice, make such temporary restraining order or prohibition* as is just. Whenever it appears to the court that the ends of justice require that other persons be made parties to the action or proceeding the court may cause them to be made parties in such manner as it directs. The party commencing or maintaining the action or proceeding may demand and recover the cost of suit including reasonable attorney fees. . . . Copies of all pleadings filed under this section shall be served on the department of justice.

WIS. STAT. § 133.16 (emphasis added). Also relevant to the statutory scheme here are two provisions of WIS. STAT. § 133.18:

(4) A cause of action arising under this chapter does not accrue until the discovery, by the aggrieved person, of the facts constituting the cause of action.

(5) Each civil action under this chapter and each motion or other proceeding in such action *shall be expedited in every way and shall be heard at the earliest practicable date.* (Emphasis added.)

*Village of Pleasant Prairie*, 206 Wis. 2d 68, 73, 556 N.W.2d 697 (1996). As the issue here is one of statutory interpretation, we recite the title to provide context.

433

## I. Whether there is a specific statutory scheme for which the plaintiff seeks exemption.

██

¶ 14. We first address whether there is a specific statutory enforcement scheme. As noted, the statutory scheme addressed in *Gillen* consisted of a single sentence recognizing the availability of injunctive relief. Here, the County concedes WIS. STAT. § 133.16's mention of injunctive relief, alone, might thus satisfy the first factor of the test. Nonetheless, it argues the WIS. STAT. ch. 133 scheme is not specific enough to qualify. Specifically, the County contends § 133.16 is too vague because it uses terms in addition to injunction, allowing a court to prevent or restrain any violations by "injunction or otherwise," and permitting parties to accomplish this through "actions or proceedings."

¶ 15. The County misunderstands the "specific" requirement. "Specific" merely recognizes that the *enforcement* of a claim must be explicitly provided for by statute to qualify for an exception to WIS. STAT. § 893.80(1). *See Gillen,* 219 Wis. 2d at 823, 826–27. When we first recognized the three-factor analysis in *Burke,* we cited *City of Racine v. Waste Facility Siting Board,* 216 Wis. 2d 616, 575 N.W.2d 712 (1998), for the "specific statutory scheme" factor. *See Burke,* 225 Wis. 2d 625 n.3. The supreme court held the factor had not been satisfied in *City of Racine* because of "the lack of specific statutory provisions for enforcement of the claim." *Burke,* 225 Wis. 2d at 625 n.3. Indeed, the plaintiffs in *City of Racine,* 216 Wis. 2d at 626–27, conceded there were no enforcement provisions for violations of the statute at issue there.

¶ 16. The County also argues WIS. STAT. § 133.16's references to a "complaint" and to "actions or proceed-

ings" suggest that WIS. STAT. ch. 133 claims are brought as traditional actions pursuant to the rules of civil procedure and, therefore, are subject to WIS. STAT. § 893.80(1)'s notice requirements.[7] This argument, however, does not account for the *Gillen* or *Nesbitt Farms* decisions.

¶ 17. The statute in *Gillen*, WIS. STAT. § 30.294, similarly provides for enforcement of injunctions generally by "legal action," without providing any specific mechanisms. Thus, WIS. STAT. ch. 30 actions must also be brought by complaint and prosecuted in the usual manner. *See Gillen*, 219 Wis. 2d at 837 (C.J. Abrahamson, concurring). Similarly, WIS. STAT. § 32.05(11), at issue in *Nesbitt Farms*, provides that appeals brought under it "shall proceed as an action in [circuit] court subject to all the provisions of law relating to actions originally brought therein." That statute does, however, set forth procedural guidance, analogous to that found here in WIS. STAT. §§ 133.16 and 133.18. *See Nesbitt Farms*, 265 Wis. 2d 422, ¶¶ 5, 10.

¶ 18. WISCONSIN STAT. § 30.294 constitutes a specific statutory enforcement scheme even though it consists of a single, vague sentence mentioning "injunction" and "legal action" and providing no further enforcement mechanism, procedural guidance, or deadlines. *See Gillen*, 219 Wis. 2d at 821–22. If that section constitutes a specific statutory enforcement scheme, then so too must the much more specific provisions of

---

[7] The County also asserts the "actions and proceedings" language suggests other remedies, in addition to injunctions, are also appropriate in WIS. STAT. ch 133 actions. However, WIS. STAT. § 133.16 and 133.18 *specifically* provide for the recovery of costs, attorney fees, and treble damages. This serves to strengthen, not weaken, the conclusion that there is a specific statutory enforcement scheme.

WIS. STAT. §§ 133.16 and 133.18, which are comparable to those found sufficient in *Nesbitt Farms*.[8] Therefore, the first factor is satisfied in this case.

## II. Whether enforcement of WIS. STAT. § 893.80(1) would hinder a legislative preference for a prompt resolution of the type of claim under consideration.

¶ 19. We next address whether enforcement of WIS. STAT. § 893.80(1) would hinder a legislative preference for a prompt resolution of WIS. STAT. ch. 133 claims. In the past, courts have often found this second factor satisfied where a specific statutory enforcement scheme established precise procedural time limits that conflicted with the 120–day timelines of §§ 893.80(1) and (1g). *See Oak Creek*, 304 Wis. 2d 702, ¶¶ 5, 9; *Burke*, 225 Wis. 2d at 620, 625–26; *Gamroth v. Village of Jackson*, 215 Wis. 2d 251, 258–59, 571 N.W.2d 917 (Ct. App. 1997). However, specific time limits are not the sole indicator of a legislative preference for prompt resolution.

¶ 20. Rather, prior decisions have also focused on statutory statements indicating such a preference. *See*

---

[8] In addition to the provisions of WIS. STAT. §§ 133.16 and 133.18 recited in this decision, those sections also specify a statute of limitations, tolling provisions, an allowance for treble damages, and state enforcement procedures. Additionally, like WIS. STAT. § 30.294, the statute at issue in *Gillen v. City of Neenah*, 219 Wis. 2d 806, 580 N.W.2d 628 (1998), both sections apply only to the specific violations provided for by the chapter in which they are set forth. *See* WIS. STAT. §§ 133.16, 133.18; *Gerol v. Arena*, 127 Wis. 2d 1, 12, 377 N.W.2d 618 (Ct. App. 1985) (WIS. STAT. ch. 133 remedies are "confined to violations under ch. 133").

*Auchinleck*, 200 Wis. 2d at 592 (response required "as soon as practicable and without delay"); *Nesbitt Farms*, 265 Wis. 2d 422, ¶ 11 (condemnation appeals "shall have precedence over all other actions not then on trial"); *Burke*, 225 Wis. 2d at 620, 625–26 ("An action contesting an annexation shall be given preference in the circuit court."). There are similar statutory statements in this instance. WISCONSIN STAT. § 133.16 provides that "the [circuit] court shall proceed, as soon as may be in accordance with its rules, to the hearing and determination of the case." Further, WIS. STAT. § 133.18(5) requires, "Each civil action under this chapter and each motion or other proceeding in such action shall be expedited in every way and shall be heard at the earliest practicable date." That the legislature used such strong language, i.e., shall, and twice set forth requirements for prompt resolution, supports a conclusion that the second factor is satisfied.

¶ 21. Additionally, in *Gillen*, the supreme court relied solely on the mere suggestion of a preference for prompt resolution, based on the statute's allowance for injunctions, holding:

> Wisconsin Stat. § 30.294 expressly allows a plaintiff to seek immediate injunctive relief to prevent injury. The enforcement procedures provided in § 30.294, are inconsistent with Wis. Stat. § 893.80(1)(b), which requires a plaintiff to provide a governmental body with a notice of claim, and to wait 120 days or until the claim is disallowed before filing an action.

*Gillen*, 219 Wis. 2d at 822. The concurrence in that case criticized this immediacy rationale, observing that it "obfuscates the differences between a preliminary injunction and a permanent injunction." *Id.* at 837 (C.J. Abrahamson, concurring). Here, on the other hand, WIS. STAT. § 133.16 provides not only for injunctive

relief generally, but also specifies that a court, "pending the filing of the answer ... may, at any time, upon proper notice, make such temporary restraining order or prohibition as is just." This provides further indication that the legislature intended prompt relief for WIS. STAT. ch. 133 plaintiffs.

¶ 22. Finally, we have recognized "that hindering a legislative preference for 'promptness' is not the only way in which the requirements of WIS. STAT. § 893.80(1) might interfere with legislative purposes." *Nesbitt Farms*, 265 Wis. 2d 422, ¶ 13. Rather, other significant conflicts may also support an exception to § 893.80(1) under the second factor of the analysis. *See id.*, ¶¶ 13–17 (applying § 893.80(1) to WIS. STAT. § 32.05(11) would limit ability of additional parties to join an appeal, thus conflicting with legislative preference "for efficiency and consistency in resolving compensation disputes").

¶ 23. Of importance here, WIS. STAT. § 133.18(4) provides, "A cause of action arising under this chapter does not accrue until the discovery, by the aggrieved person, of the facts constituting the cause of action." Yet, a claim might be extinguished before discovery of the facts underlying it by the application of § 893.80(1)(a), which requires that notice of the injury must be provided "[w]ithin 120 days after the happening of the event giving rise to the claim." Indeed, here the circuit court concluded the "event" was the creation of the contract, rather than the Laddusires' subsequent discovery of its terms.

¶ 24. By hindering a party's ability to bring timely actions to enforce violations, applying the 120–day limitations period would be contrary to the legislature's intent that WIS. STAT. ch. 133 "be interpreted in a manner which gives the most liberal construction to

achieve the aim of competition." Wis. Stat. § 133.01. In light of the legislature's multiple indications of a preference for prompt resolution, and the conflict with Wis. Stat. § 133.18(4), we conclude the second factor is satisfied in this case.

## III. Whether the purposes for which Wis. Stat. § 893.80(1) was enacted would be furthered by requiring that a notice of claim be filed.

■

¶ 25. Finally, we address whether the purposes for which Wis. Stat. § 893.80(1) was enacted would be furthered by requiring that a notice of claim be filed. In other words, should the notice requirements still apply despite the conflicts with Wis. Stat. § 133.16 and 133.18? *See Auchinleck*, 200 Wis. 2d at 595–96; *Nesbitt Farms*, 265 Wis. 2d 422, ¶¶ 21–23.

¶ 26. We first observe that the application of this third factor is a nebulous matter. When the first two factors of the analysis have been found to favor exemption from Wis. Stat. § 893.80(1), to our knowledge no court has concluded the third factor did not also favor exemption. Thus, neither has any court addressed how such a conclusion, that the third factor militated against exemption, would affect the outcome of the analysis.[9] In fact, the County concedes "no court has declared whether all of the prongs *must* be fulfilled for

[9] In both *Auchinleck*, 200 Wis. 2d at 595–96 and *Gillen*, 219 Wis. 2d at 822–24, the supreme court observed the conflicting, specific statutory schemes had to take precedence over the more general notice statute. Thus, it is unclear whether the third factor could outweigh the first two factors in any given case.

When first setting forth the three-factor analysis in *Burke*, 225 Wis. 2d at 625 and nn.3–5, we cited a different case for the

the notice requirements of § 893.80 to give way." Further contributing to the nebulosity of the third factor's application, it is unclear whether we should focus only on the statutes or also on the facts. In most cases courts

existence of each factor. For the third factor, we cited *City of Waukesha*, 184 Wis. 2d 178. Recall, however, that case was where the supreme court first recognized Wis. Stat. § 893.80(1) applied in all types of cases. *Id.* at 202. The court there did not engage in what is now our three-factor test. To the contrary, it refused to consider a claim that an exception existed for Wis. Stat. ch. 144 (1991–92) enforcement actions even though the chapter's enforcement provisions, Wis. Stat. §§ 144.98 and 144.99 (1991–92), explicitly provided that all violations of the chapter constituted public nuisances enforceable by injunction. Yet, that is precisely what the subsequent *Gillen* decision concluded was sufficient to create an exception, there, without consideration of the third *Burke* factor. *See Gillen*, 219 Wis. 2d at 821–22, 826–27.

The court declined in *City of Waukesha*, 184 Wis. 2d at 193 n.10, to address whether there should be an exception because, although the DNR had requested an injunction, *id.* at 186, it had not requested immediate relief via a *temporary* injunction. In *Gillen*, the court abrogated *City of Waukesha*, explicitly rejecting any requirement that injunctive relief, in any form, even be requested to recognize an exception to Wis. Stat. § 893.80(1)'s notice requirements, relying instead on the enforcement scheme's provision for injunctive relief. *Gillen*, 219 Wis. 2d at 826 (per curiam), 834–35 (C.J. Abrahamson, concurring) (criticizing the per curiam for failing to acknowledge it was overruling *City of Waukesha*). Thus, our reliance on the much maligned *City of Waukesha* decision to recognize a third factor for the "exceptions test," may not have been the best choice. Despite our concerns with the third factor, we are obliged to apply it. *See Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997) (court of appeals may not overrule, modify, or withdraw language from a prior published opinion). Perhaps the issue is ripe for review by our supreme court; it has yet to address our recognition of a three-factor test.

have addressed the third factor only by comparing the statutes at issue, rather than addressing the particular facts of the given case. However, in *Oak Creek*, 304 Wis. 2d 702, ¶¶ 10–12, for example, we addressed both.

¶ 27. Aside from simply restating the purposes underlying the notice of injury and notice of claim provisions, the County provides no argument applying them in the context of WIS. STAT. ch. 133 claims, generally, or as they apply to the specific facts of this case. We may treat this failure to sufficiently address the issue as a concession. *See State v. Flynn*, 190 Wis. 2d 31, 39 n.2, 527 N.W.2d 343 (Ct. App. 1994). E-Z Roll Off argues there was no need to provide notice for investigation purposes, because the County entered into the contract and therefore already knew its terms. It further argues antitrust actions will frequently involve continuing violations and, therefore, the need for prompt investigation will not exist.

¶ 28. By the very nature of WIS. STAT. ch. 133 antitrust claims, aggrieved parties often will not immediately know of the circumstances giving rise to a claim. The prohibited deals and conspiracies will be secret and, thus, the legislature has provided for tolling commencement of the limitations period for bringing claims until discovery of the conduct. *See* WIS. STAT. § 133.18(4). Such conduct will, however, be known to the parties partaking in it. Hence, E-Z Roll Off is correct that there is little need to provide for prompt investigation into the circumstances giving rise to the claim. "In short, a [ch. 133 antitrust action] is not like a suit to recover damages for injuries sustained in a slip-and-fall on municipal property, of which, absent notice under WIS. STAT. § 893.80(1), a municipality may know absolutely nothing prior to suit." *Nesbitt Farms*, 265 Wis. 2d 422, ¶ 25.

¶ 29. We further agree with E-Z Roll Off that in the case of continuing violations, there is also a diminished need to provide an opportunity for prompt investigation. *See* WIS. STAT. § 133.01 (ch. 133 is intended "to safeguard the public against the creation or *perpetuation* of monopolies") (emphasis added). Additionally, here, E-Z Roll Off did promptly provide actual notice of the circumstances giving rise to its claim when it met with Sexton and expressed dissatisfaction with Waste Management's preferential pricing, and claimed that preference created a monopoly. Thus, in any event, the purposes of notice were honored here.

¶ 30. Neither party specifically addresses the WIS. STAT. § 893.80(1)(b) purpose of allowing the municipality an opportunity to effect compromise without suit, and to budget for settlement or litigation. However, in this case, E-Z Roll Off did eventually provide that notice and the claim was disallowed prior to filing the action.[10] Thus, again, the purposes of notice were honored here.

¶ 31. Regarding the interactions of the statutes generally, a defendant municipality may be unable to simply negotiate a compromise on a WIS. STAT. ch. 133 claim because, even if a private party plaintiff settles its claim, the State might nonetheless prosecute the conduct criminally. In fact, WIS. STAT. § 133.16 requires that copies of all ch. 133 pleadings be served on the department of justice. Thus, the opportunity-to-compromise purpose is less important in ch. 133 actions. Further, while WIS. STAT. § 893.80(1)(b)'s 120–day delay may allow municipalities some opportunity to budget for defending a claim, the legislature has strongly expressed its intent that ch. 133 actions be decided swiftly.

---

[10] As noted *supra,* the WIS. STAT. § 893.80(1)(b) notice of claim is not subject to a filing deadline.

The general notice statute cannot override Wis. Stat. §§ 133.16's and 113.18's specific provisions requiring prompt resolution. *See Auchinleck*, 200 Wis. 2d at 595–96; *Gillen*, 219 Wis. 2d at 822–24. "Further, Wis. Stat. § 893.80(5) expressly states that specific rights and remedies provided by other statutes take precedence over the provisions of § 893.80." *Auchinleck*, 200 Wis. 2d at 596.

¶ 32. Finally, in *Gillen*, which preceded our recognition of a three-factor test, the supreme court recognized an exception to Wis. Stat. § 893.80(1) without any discussion of the third factor.[11] Rather, it relied on a conflicting statutory scheme (factors one and two) and the fact that the statutory claims at issue there could be enforced by private citizens on behalf of the public interest. *Gillen*, 219 Wis. 2d at 820–21, 826–27. Wisconsin Stat. ch. 133 claims are likewise brought in the public interest:

> The Wisconsin legislature determined that private, civil antitrust suits are important methods of enforcing chapter 133. To encourage private enforcement, the legislature built incentives into the statute. These include tolling the statute of limitations under certain circumstances, allowing the cost of the suit, including reasonable attorney fees to prevailing claimants, awarding treble damages, and granting expedited treatment to civil antitrust actions in the courts. Under this legislative scheme, a private party "performs the office of a private attorney general," when bringing a civil antitrust action and significantly supplements the government's limited resources for enforcing antitrust law.

---

[11] Thus, we reject the County's bald assertion, lacking citation, that the *Gillen* court proceeded to examine all three factors.

*Carlson & Erickson Bldrs., Inc. v. Lampert Yards, Inc.,* 190 Wis. 2d 650, 663–64, 529 N.W.2d 905 (1995) (internal citations omitted). While not comfortably fitting within the third—or any other—factor of the analysis, this "private attorney general" similarity provides further support for recognizing an exception pursuant to *Gillen.*[12]

*By the Court.*—Judgment reversed and cause remanded.

---

[12] Because we conclude WIS. STAT. ch. 133 claims are exempt from WIS. STAT. § 893.80(1)'s notice requirements, we need not resolve E-Z Roll Off's remaining arguments regarding continuing violations and actual notice with lack of prejudice. *See State v. Castillo,* 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) (cases should be decided on the narrowest possible grounds).